### J. W. Carter v. The State.

#### No. 2667.   Decided December 3, 1902.

**1.—Plea in Abatement—Pendency of Another Indictment.**

Pendency of another indictment for the same offense or for an offense growing out of the same act, can not be pleaded in abatement or bar of the indictment.

**2.—Assault to Rape—Evidence—Statements by Prosecutrix.**

On a trial for assault with intent to rape, statements by the prosecutrix as to the occurrence are inadmissible as res gestae evidence where it is evident that fear that her aunt would whip her entered largely into the statement, and the whole affair excludes spontaneity, and was but a narration of past occurrences under circumstances that would exclude their admission.

**3.—Same—Charge of Court.**

On a trial for assault with intent to rape, where the court, in the charge, after defining an assault, added, "The injury intended may be either bodily pain, restraint or sense of shame or other disagreeable emotion of the mind;" Held erroneous, in that in assault to rape, even where the prosecutrix is under 15 years of age, the rule is, that there must be a taking hold of the person of the girl in such manner as to indicate a specific intent to have carnal knowledge of her; there must be sufficient force to put prosecutrix under subjection to assailant when he can enforce his desires with or without her consent.

Appeal from the District Court of Hamilton. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of assault with intent to rape a female under 15 years of age; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to rape Maude Loyd, a female under the age of 15 years, on the 4th day of February, 1900.

The essential facts are stated in the opinion as well as the facts pertaining to appellant's bills of exception.

*J. C. Main* and *Eidson & Eidson,* for appellant, filed an able and elaborate brief.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charges and the conviction was obtained for an assault with intent to commit rape upon a girl under 15 years of age, and given five years in the penitentiary.

Appellant interposed what he terms two pleas,—one to the jurisdiction, and the other in abatement. They set up the same facts, the substance of which is that after the alleged occurrence the grand jury returned a bill of indictment charging appellant with an aggravated assault, which was properly certified to the county court. For about two years this indictment was pending in the county court, and the State kept the prosecuting witness from attending the court during that space of time, except at the first term after the transfer was made, and about two years subsequent to the return of the indictment for aggravated assault the grand jury returned the bill upon which this conviction is predicated. It is further stated in these pleas that appellant was ready and insisting upon a speedy trial of the case pending in the county court. Without entering into a discussion of the policy of this character of conduct, it is sufficient to state that it is well settled that the pendency of another indictment for the same offense, or for an offense growing out of the same acts, can not be pleaded either in abatement or in bar of the indictment upon which the case was tried. Schindler v. State, 15 Texas Crim. App., 394; and there are quite a number of cases in this State which follow the rule laid down in the Schindler case.

Mrs. Agnes Beasley, aunt of prosecutrix, testified that prosecutrix came out of the room in which the alleged assault was said to have been committed, crying, and started to tell witness what had occurred in the room, and witness would not let her do so. Witness further stated that she took prosecutrix downstairs, through the hallway, dining room, and kitchen to the outside of the house, without stopping on the way, and there was not exceeding five minutes from the time the child opened the door until she reached the outside of the house, where a conversation occurred. The district attorney then asked her to state what prosecutrix told her on the outside of the house. At this point appellant objected to

the statement of the prosecutrix, on the ground that said statements would be inadmissible because they were hearsay, and not a part of the transaction, and in no way res gestae. These were overruled, and the witness testified: "When we got outside I asked her [prosecutrix] what she was doing up there. She said that she did not unfasten her clothes; that the defendant put her hand on his privates. She said that she got off the bed, and he pulled her back. She said that the defendant got down and looked at her, and said she was most too small, but that he would try it any way. She said that defendant pulled one side of her drawers down." These matters are shown by the bill. In order to fully understand the exception, in this connection the evidence of the witness Beasley, as well as the prosecutrix, should be somewhat further taken into consideration. Mrs. Beasley testified that prosecutrix and appellant were in the room together; that Proctor, another witness in the case, had gone from the dining room, perhaps to appellant's room, and called him to supper. The witness immediately went to the room and called prosecutrix, a girl then about 11 or 12 years of age. "She [prosecutrix] came out, and was crying, and commenced to tell me, and I told her to hush, and come on downstairs. That Maude [prosecutrix] opened the door. I saw defendant, and noticed nothing vulgar about him. I left the hall, and went on downstairs as soon as I could get hold of Maude. She [Maude] was crying because she was afraid I would whip her, and said she had been calling me. I had called her from the dining room, and thought I heard her answer." We do not think this testimony was admissible as res gestae. It tends to exclude the idea that these were the acts speaking through the mouth of the witness. They were but narrations of past occurrences, under circumstances that would exclude their admission. Mrs. Beasley states she prohibited the girl from telling her what had occurred in the room when she came out of the door; that the girl was crying for fear Mrs. Beasley would whip her; that in this condition of mind she lead her through the hall, downstairs, out through the dining room and kitchen, and outside the house, and there, with the condition of the girl and her mind as stated, commanded her to make her statement. The girl was living with Mrs. Beasley, her mother being dead. Mrs. Beasley had control of her, being her own aunt. This testimony, in our judgment, would exclude the idea of the girl's statement being res gestae. It is evident that fear entered very largely into the girl's statements, and the whole affair excludes spontaneity.

The following excerpt of the court's charge is criticised as erroneous: "The injury intended may be either bodily pain, restraint, or sense of shame or other disagreeable emotion of the mind." The court had previously given this definition of assault: "The use of any unlawful violence upon the person of another with the intent to injure her, whatever be the means or degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture, showing in itself or by words accompanying it an immediate intention coupled

with the ability to commit a battery, is an assault." This precedes the excerpt criticised. This matter is presented by bill of exceptions. We believe this charge is error in this character of case. As a prerequisite to assault with intent to rape upon a girl under the age of 15 years, there must be an assault, and that assault must be such as the facts and circumstances indicate beyond a reasonable doubt the purpose and intent on the part of the accused at the time to have carnal knowledge of the girl. The writer has not been in harmony with the opinion of the majority of the court in regard to the question of force vel non in assault to rape upon a girl under 15 years of age, and therefore is following what he understands to be the rule laid down by the majority. If I understand this rule, it means that there must be a taking hold of the person of the girl, in such manner as to indicate the specific intent to have carnal knowledge of her; that the mere fact that he may have produced in her a sense of shame or other disagreeable emotion of the mind, or constraint, does not meet the idea of assault coupled with intent to commit rape. The assault under the statute means force of some kind, and, as construed by the majority of the court, means sufficient force upon the person of the girl to put her under his subjection, either with or without her consent; but still he must have her in the position where he can enforce his desires. I do not understand the mere fact that the party by simply producing in the mind or feeling of a girl a sense of shame, without touching her or in some way bringing her under his subjection, so that he can enforce his desires, would be such an assault as contemplated by the statute defining this crime. There are many ways to commit an assault by the use of means which would produce constraint or a degree of shame or other disagreeable emotions of the mind without ever touching a girl, or without having her in a condition where he could enforce his desires. This is given as a part of the definition of assault, and the jury are instructed that, after giving this definition, if the assault was made with the intent to have carnal knowledge of the girl, the crime would be complete.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*