Elizabeth MORGAN, M.D., Plaintiff–Appellant,

v.

Eric A. FORETICH; Vincent Foretich; Doris Foretich, Defendants–Appellees.

Hilary FORETICH, an Infant who sues Through her mother and next friend, Elizabeth MORGAN, M.D., Plaintiff–Appellant,

v.

Eric A. FORETICH; Vincent Foretich; Doris Foretich, Defendants–Appellees.

Elizabeth MORGAN, M.D., Plaintiff–Appellee,

v.

Eric A. FORETICH; Vincent Foretich; Doris Foretich, Defendants–Appellants.

Hilary FORETICH, an Infant who sues Through her mother and next friend, Elizabeth MORGAN, M.D., Plaintiff–Appellee,

v.

Eric A. FORETICH; Vincent Foretich; Doris Foretich, Defendants–Appellants.

Nos. 87–2549, 87–2550, 87–2558 and 87–2559.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1988.

Decided May 17, 1988.

Rehearing and Rehearing In Banc Denied July 21, 1988.

Mark Mitchell Katz (James E. Sharp, V. Thomas Lankford, Sharp, Green & Lankford, Washington, D.C., on brief), for appellants.

Robert B. Machen, Fairfax, Va., for appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and ERVIN, Circuit Judges.

DONALD RUSSELL, Circuit Judge.

The plaintiffs, Dr. Elizabeth Morgan and her minor daughter Hilary Foretich, brought this action against the defendants, Dr. Eric Foretich and his parents, for damages arising out of the defendants' alleged sexual abuse of Hilary. Dr. Foretich counter-claimed for defamation and other damages caused by this lawsuit. The jury found for Dr. Foretich on Dr. Morgan's claims and for Dr. Morgan on Dr. Foretich's counter-claims. Plaintiffs appealed, defendants cross-appealed, and the appeals were consolidated for oral argument. Jurisdiction is based on diversity of citizenship.

The determinative issue in this appeal is whether the district court erred in excluding evidence that Hilary's sister had been sexually abused and in excluding all out-of-court statements made by the plaintiff, Hilary Foretich. We conclude that the district court abused its discretion by excluding this evidence and we reverse and remand that portion of its judgment. However, the district court committed no error with regard to defendants' counter-claims and we affirm that part of its judgment.

### I.

Hilary Foretich was born in August 1982, the daughter of Dr. Eric Foretich and his third wife from whom he is now divorced, Dr. Elizabeth Morgan. Heather Foretich is three years older than Hilary and is the minor daughter of Dr. Foretich and his second wife. Dr. Foretich was awarded visitation rights with both children and the girls have frequently visited the Foretich home simultaneously.

In the summer of 1983, Dr. Morgan received a call from Heather's mother who expressed concern that the girls were possibly being abused during visitation periods with Dr. Foretich and his parents. Dr. Morgan became further alarmed when signs of physical abuse became apparent on Hilary and later when Hilary displayed an age-inappropriate understanding of sexual matters and began to make sexually explicit statements. After consulting specialists in the field of child sexual abuse, Dr. Morgan became convinced that Hilary was being abused during the visitation

periods with Dr. Foretich and his parents. This action followed.

At trial, plaintiffs attempted to introduce out-of-court evidence showing that Hilary's sister, Heather, displayed similar signs of sexual abuse. Plaintiffs also sought to introduce statements made by Hilary to her mother and to a child psychologist. The district court excluded all evidence of this nature.

Plaintiffs contend that the district court committed reversible error in its evidentiary rulings. First, plaintiffs assert that evidence of Heather's abuse should have been admitted to show the identity of the perpetrator and to rebut claims that Hilary's injuries were accidental or self-inflicted. Second, plaintiffs argue that statements made by Hilary to her mother after Hilary returned from visitation with Dr. Foretich were admissible as excited utterances. Finally, plaintiffs contend that statements made by Hilary to her psychologist were admissible as statements made for purposes of medical diagnosis or treatment.

Defendants respond by arguing evidence of sexual abuse suffered by Heather Foretich was properly excluded because of its potential for prejudicing the jury. Defendants further assert that all out-of-court statements made by Hilary Foretich were properly excluded because of hearsay considerations and because Hilary's age made her incompetent to testify as a witness.

## II.

### General

Reported cases of child abuse in this country have increased dramatically in recent years. An estimated one in five females suffers from sexual abuse as a child.[1] Figures from 1976 to 1983 reflect an 852% increase in the number of child sexual abuse cases reported.[2] However, in two-thirds of child abuse cases, the incident is never even reported.[3] Even when the incident is reported, prosecution is difficult and convictions are few.

Much of this difficulty stems from the fact that methods of proof in child abuse cases are severely lacking. Often, the child is the only witness. Yet age may make the child incompetent to testify in court, and fear, especially when the perpetrator is a family member, may make the child unwilling or unable to testify.

Courts and legislatures alike have struggled with this deeply troubling problem. The courts have often been criticized for expanding existing hearsay exceptions beyond recognition[4] while several state legislatures have undertaken to create altogether new hearsay exceptions for the victims of child abuse.[5]

In the form of a civil suit, the instant case squarely presents this Court with many of these difficult issues. In rendering this judgment, we are mindful of the common-sense admonition that "[w]hen the choice is between evidence which is less than best and no evidence at all, only clear folly would dictate an across-the-board policy of doing without." Fed.R.Evid. art. VIII advisory committee's note.

## III.

### Evidence of Abuse Suffered by Hilary's Sister, Heather Foretich

At trial, plaintiffs sought to introduce testimony by Dr. Charles Shubin, a pediatrician who was qualified as an expert in the field of child sexual abuse. Dr. Shubin had examined both Hilary and Heather Foretich and was prepared to testify that both girls had suffered sexual injuries and that the mechanism of injury was essentially the same in both cases. Plaintiffs also had numerous other professionals and lay

1. D. Finkelhor, *Sexually Victimized Children* 53 (1979), *cited in* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv.L.Rev. 806 (1985).

2. Comment, *Legislative Responses to Child Sexual Abuse Cases: The Hearsay Exception and the Videotape Deposition,* 34 Cath.U.L.Rev. 1021, n. 1 (1985).

3. Note, *supra,* note 1, at 806, n. 7.

4. *See, e.g.,* Skoler, *New Hearsay Exceptions for a Child's Statement of Sexual Abuse,* 18 J. Marshall L.Rv. 1 (1984); Comment, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis,* 8 J.Juv.L. 59 (1984); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum.L.Rev. 1745 (1983).

5. *E.g.,* Wash.Rev.Code Ann. § 9A.44.120 (Supp. 1982); Kan.Stat.Ann. § 60–460(dd) (Supp.1982).

witnesses who were prepared to testify that Heather had been sexually abused during visitation periods with the defendants.

The district court excluded all evidence of sexual abuse suffered by Heather Foretich concluding that such evidence was prejudicial and could not be allowed without a full scale trial on the allegations made by Heather. We disagree.

█ As a preliminary matter, the district court erred in concluding that a full scale trial would be required into allegations made by Heather Foretich. This Court has held that in applying Rule 404(b) of the Federal Rules of Evidence, evidence of other crimes need not be established by the "clear and convincing evidence" standard which some other courts have seen fit to apply.[6] Instead, "we have not imposed any 'clear and convincing evidence' standard in our application of Rule 404(b)" and "we decline to adopt such a requirement." *United States v. Martin*, 773 F.2d 579, 582 (4th Cir.1985). Rather, evidence of other crimes or acts will be admissible even absent clear and convincing proof of those other crimes or acts if the proffered evidence can meet the threshold requirements of Rule 404(b).

Rule 404(b) of the Federal Rules of Evidence provides that

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This Court has held Rule 404(b) to be an "inclusionary rule" which " 'admits all evidence of other crimes [or acts] relevant to an issue in a trial except that which tends to prove *only* criminal disposition.' " *United States v. Masters*, 622 F.2d 83, 85 (4th Cir.1980) (emphasis added) (quoting J. Weinstein & M. Berger, *Weinstein's Evidence* § 404[08] at 404–41 and 404–42 (1979)).

The threshold requirements for admitting evidence under Rule 404(b) were recently stated by this Court in *United States v. Lewis*, 780 F.2d 1140 (4th Cir. 1986). In *Lewis*, we stated the determinative questions to be (a) whether the proffered evidence is relevant to an issue other than the defendant's character, and (b) whether the probative value is *substantially* outweighed by its prejudicial effect. *Id.* at 1142.

█ The proffered evidence of sexual abuse suffered by Heather is admissible under the standard set forth in *Lewis.* First, the evidence was not offered to show the depravity of the defendants' character. Rather, this evidence was highly relevant to disputed issues in this case. Fundamentally, this evidence was essential in that it tended to identify the defendants as the perpetrators of the crime against Hilary since only the defendants had access to both girls. No other piece of evidence could have had a comparable probative impact as to the identity of Hilary's assailants. This evidence also negated several defenses raised by the defendants: Hilary's injuries were caused by Dr. Morgan; were fabricated by Dr. Morgan; or were caused by self-infliction. It has been suggested by some that, in child abuse cases, the inquiry should end here: "When prior acts are admitted to prove disputed issues in the case, such as the identity of the defendant, the absence of mistake or accident, or the defendant's intent, no violation of the other crimes evidence rule exists." Comment, *Other Crimes Evidence to Prove the 'Corpus Delicti' of a Child Sexual Offense*, 40 U. Miami L.Rev. 217, 220 (1985).

However, after determining that other acts are relevant to an issue besides character, the question then becomes whether the probative value of the evidence is *substantially* outweighed by its prejudicial effect. This question has previously been addressed by this Court in the analogous case of *United States v. Woods*, 484 F.2d 127 (4th Cir.1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974).

---

6. *See United States v. Wormick*, 709 F.2d 454 (7th Cir.1983); *United States v. Leisure*, 807 F.2d 143 (8th Cir.1986). *But see, United States v.*

*Beechum*, 582 F.2d 898 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

In *Woods*, a case allowing criminal prosecution for the suffocation death of a young child, we allowed the government to introduce evidence of abuse suffered by other children whom the defendant had access to even though the defendant was not accused of abusing the other children. We noted "when the crime is one of infanticide or child abuse, evidence of repeated incidents is especially relevant because it may be the only evidence to prove the crime." *Id.* at 133. We further found "the evidence [of other crimes or acts] is so persuasive and so necessary in case of infanticide or other child abuse by suffocation if the wrongdoer is to be apprehended, that we think its relevance clearly outweighs its prejudicial effect on the jury." *Id.* at 135. We find the need for other act evidence to be equally compelling in the context of child sexual abuse. By the very nature of the crime, there are seldom any eyewitnesses. Therefore, as in this case, the defendant's word is pitted against that of a young child and the older defendant will almost certainly have an edge in credibility.

In this case, the jury was left to choose between believing the story of a young girl as related by several witnesses or believing the testimony of her father, the doctor, who offered several plausible explanations for the child's injuries. However, had the jury been allowed to hear of the other sister's very similar injuries, the doctor's explanations would no longer have been so plausible. Given the similarity of the injuries and the fact that only the defendants had access to both girls, the identity of the perpetrators becomes clearer. And given this evidence, the defenses of self-infliction, fabrication, or abuse by Dr. Morgan become quite implausible.

We have stated previously that the possibly prejudicial effect of evidence can " 're-quire exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.' " *Masters* at 87 (quoting Trautman, *Logical or Legal Relevancy—A Conflict in Theory,* 5 Vand.L.Rev. 385, 410 (1951–52)). This

is not that case. While we are cognizant of the potential for prejudice in this case, we are also mindful of the fact that the trial judge could have issued a limiting instruction. *Id.* To simply exclude this evidence which went not to the character of the accused but rather to essential issues on trial and which was highly probative of the defendants' guilt was an abuse of discretion.

## IV.
### *Hilary's Statements to Her Mother*

Immediately after returning home from visitation periods with her father, Hilary would often appear extremely excited and agitated and would begin to describe to her mother sexual activities that had occurred during the visits. On the advice of her attorney, Dr. Morgan began to keep a diary recording Hilary's statements.

The district court originally ruled that Dr. Morgan could not testify to what Hilary had told her. The court reasoned that if the diary itself were to be admitted into evidence then any such testimony by Dr. Morgan would merely be cumulative. However, at the conclusion of trial, the court refused to admit the diary or excerpts into evidence finding that they were self-serving and full of irrelevancies. Without ever reaching the merits of whether Dr. Morgan's testimony or diary would fit within one of the exceptions to the hearsay rule, the district court effectively excluded all reports of what had transpired during visitation.

Plaintiffs contend that five statements made by Hilary to Dr. Morgan should be admitted under the excited utterance exception to the hearsay rules. Fed.R.Evid. 803(2). There follows a synopsis of the five statements offered by the plaintiffs:

#### *March 25, 1985*

Hilary was returned home by Dr. Foretich to Dr. Morgan's housekeeper at 3:35 p.m. Dr. Morgan arrived at 4:35 to find Hilary running around the house yelling and shrieking excitedly. At 5:00, Hilary was calmed down enough to talk and began to describe how she had been sexually abused by the defendants.

*May 20, 1985*

Hilary was returned at 3:30, Dr. Morgan returned home at 4:45. By 6:00, Hilary began to describe sexual assaults that had been perpetrated on her by the defendants.

*October 21, 1985*

Hilary was returned by her grandfather at 4:00 and was again in a highly excited state. By 7:00, she had settled down enough to report that she had been sexually assaulted by the defendants.

*January 20, 1986*

Hilary was returned by her father at 7:00 p.m. and began to tell her mother of sexual abuse that had occurred the night before by her father.

*July 20, 1986*

Hilary was watching television with Dr. Morgan and viewed a scene which prompted her to describe sexual acts that had been performed on her by the defendants.

Defendants argue that these out-of-court statements made by Hilary to her mother were properly excluded because Hilary's age would have made her incompetent to testify as a witness and because the statements do not meet the requirements of the excited utterance exception to the hearsay rule.

Rule 803 of the Federal Rules of Evidence provides in pertinent part

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of

excitement caused by the event or condition.

The basis for this rule, which creates a hearsay exception even when the declarant is available as a witness is the assumption that an excited declarant will not have had time to reflect on events and to fabricate. J. Weinstein & M. Berger, *Weinstein's Evidence* § 803(2)[01] (1984).

Defendant's first and strongest objection to the admission of Hilary's out-of-court statements under the excited utterance exception is that Hilary would have been incompetent to testify at trial and should not, therefore, be allowed to testify out of court.[7] This argument is without merit.

■ We agree with the majority of courts that have studied this issue and have reached the conclusion that "although a child is incompetent to testify, testimony as to his spontaneous declarations or *res gestae* statements is nevertheless admissible." Annotation, *Admissibility of Testimony Regarding Spontaneous Declarations Made by One Incompetent to Testify at Trial*, 15 A.L.R. 4th 1043 (1982).[8] This issue has seldom been raised before the federal courts of appeals. However, those that have examined the issue are in agreement with our holding today.[9]

Likewise, the leading commentators have concluded that "an excited utterance is admissible despite the fact that the declarant was a child and would have been incompetent as a witness for that reason." McCormick, *McCormick on Evidence* § 297 at 858 (3d Edition 1984). *See also* 6 *Wigmore on Evidence* § 1751 (Chadbourn Rev.1976). Therefore, should Hilary's out-of-court statements to her mother otherwise qualify

---

**7.** Rule 601 of the Federal Rules of Evidence states that "[e]very person is competent to be a witness except as otherwise provided in these rules." However, since Hilary was never called as a witness, we are not directly faced with the issue of whether she would have been competent to testify at trial. Rather, we find that her statements are admissible regardless of her competency to testify in court.

**8.** *See also* Comment, *supra,* note 4 at 65 ("[T]he preponderance of authority is to the effect that admissibility of excited utterances is not affected by the declarant's incompetence due to infancy or other legal unavailability because the na-

ture of the utterance is such that it obviates the usual sources of untrustworthiness in children's testimony.").

**9.** *See United States v. Nick,* 604 F.2d 1199, 1202 (9th Cir.1979) (Three year old "could not have been subjected to cross-examination even if he had been called as a witness by reason of his tender years," yet his statements were admissible under the spontaneous declaration exception.); *Jones v. United States,* 231 F.2d 244 (D.C. Cir.1956) (Five year old was incompetent to testify as a witness but statements to her mother were admissible as spontaneous declarations.)

as excited utterances, her youthful incompetency will not bar the admission of this testimony.

To qualify as an excited utterance, the declarant must (1) have experienced a startling event or condition and (2) reacted while under the stress or excitement of that event and not from reflection and fabrication. J. Weinstein & M. Berger, *Weinstein's Evidence* § 803(2)[01] at 803–87–91.[10]

There appears to be little doubt but that Hilary has been subjected to a startling condition. Testimony of the doctors and other witnesses was sufficient to justify a finding that Hilary has been sexually abused. The question, then, is whether Hilary reacted while under the stress of this condition.

To answer this question, several factors must be considered, including: (1) The lapse of time between the event and the declarations; (2) the age of the declarant; (3) the physical and mental state of the declarant; (4) the characteristics of the event; and (5) the subject matter of the statements. *United States v. Iron Shell*, 633 F.2d 77, 85–86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

In *Iron Shell*, the Eighth Circuit held in a child sexual abuse case that "[t]he lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2)." *Id.* at 85. Indeed, much criticism has been directed at courts which place undue emphasis on the spontaneity requirement in child sexual abuse cases.[11] It has been argued that children do not necessarily understand sexual contact by adults to be shocking, especially when the adult is a parental figure from whom the child desires love and affection.[12] Even if the child is aware of the nature of the abuse, significant delays in reporting this abuse may occur because of confusion, guilt, and fear on the part of the child.[13]

One attempt to deal with this problem has been a recognition that the time lapse to be considered in these cases is not simply the time between the abuse and the declaration. Rather, courts must also be cognizant of the child's first real opportunity to report the incident.[14] Plaintiff's declaration of July 20, 1986 has been proffered with absolutely no reference to the time of abuse or the child's first opportunity to speak of the abuse and therefore cannot qualify as an excited utterance. However, the first four statements proffered by the plaintiffs were made within three hours of the child's first opportunity to speak with her mother.

In determining whether a statement qualifies as an excited utterance, courts have varied greatly as to just how much of a time lapse is too much.[15] Given all of the other factors of trustworthiness present in this case, we find that three hours is well within the bounds of reasonableness and Hilary's statements were spontaneous declarations.

In addition to the time lapse consideration, numerous other factors of trustworthiness cited as important by the Court in

**10.** *See also* J. Bulkley, *Child Sexual Abuse and the Law*, 155 (1982).

**11.** Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum.L.Rev. 1745, 1756 (1983).

**12.** *Id.*

**13.** *Id.* at 1757.

**14.** *See Nick, supra*, Note 7, at 1201 (assault occurred sometime during the day. The defendant and the child were asleep when mother arrived to pick the child up and the child reported the assault only after getting home and being questioned by his mother); *Kilgore v. State*, 177 Ga.App. 656, 340 S.E.2d 640, 643 (1986) (assault occurred sometime between 3:30 p.m. and 12:15 a.m. The child reported the assault only after being taken home and awakened. The court noted that the report was made at "the first real opportunity.")

**15.** *See Carter v. States*, 44 Tex.Crim. 312, 70 S.W. 971 (1902) (Statement made by child within five minutes of the assault found to lack spontaneity); *People v. Gage*, 62 Mich. 271, 28 N.W. 835 (1886) (Child's statement to her mother three months after the assault was admissible); Annotation, *Time Element As Affecting Admissibility of Statement or Complaint Made by Victim of Sex Crime as Res Gestae, Spontaneous Exclamation, or Excited Utterance*, 89 ALR3d 102 (1979).

*Iron Shell* are present in this case. All of the statements offered by plaintiffs were made before Hilary was four years old, and it is virtually inconceivable that a child of this age would have either the extensive knowledge of sexual activities or the desire to lie about sexual abuse that would be required to fabricate a story such as the one told by Hilary.[16] Hilary's tender years greatly reduce the likelihood that reflection and fabrication were involved. An examination of Hilary's physical and mental state shows that she was nearly hysterical in the moments immediately preceeding most of these statements. There can be little doubt but that she was acting under the stress of the situation. Hilary's method of giving these statements consisted of touching herself sexually and speaking in a vocabulary that definitely belonged to a child which adds a "ring of verity to her declarations." *Nick*, 604 F.2d at 1204. Finally, Hilary's story is corroborated by substantial physical evidence and doctors' testimony. All of these factors lead to the conclusion that Hilary's out-of-court statements to her mother are trustworthy and should have been admitted into evidence.

On the whole, this case bears remarkable similarity to *United States v. Nick*, 604 F.2d at 1204 in which the Ninth Circuit admitted statements made by a sexually abused boy to his mother as excited utterances because of the following "significant guarantees of trustworthiness":

> The statement was made while the child was still suffering pain and distress from the assault. The childish terminology has the ring of verity and is entirely appropriate to a child of his tender years. The child's statement was corroborated by physical evidence ... it is extremely unlikely that the statement under these circumstances was fabricated. The statement was unquestionably material, and it was more probative as to the identity of the assailant than any other evidence, except [defendant's] confession. The declaration to his mother [after arriving home and being questioned] was more, rather than less probative than testimony that he might have been able

to give months after the event even if the district court would have found him competent. (Fed.R.Evid., Rule 601) The interests of justice were served by admitting the declaration of this child, who was the victim of a sexual assault, and far too young to appreciate the implications of that assault.

> Finally, that portion of the statement identifying [defendant] as the assailant is inherently trustworthy under all of the circumstances of this case. Extrinsic evidence established that [defendant] had the opportunity to commit the crime. The child knew [defendant] well, and he was not likely to mistake his assailant. The mother was not likely to have had any faulty recollection of the child's simple, shocking ... statement. Moreover, she herself was subject to rigorous cross-examination on that score.

The above could well have been written for the case at hand. We agree with the judgment of the Ninth Circuit and conclude that based on the facts of this case, the district court abused its discretion in not admitting Hilary's four statements to her mother under the excited utterance exception to the hearsay rule.

## V.
### *Hilary's Statements to Her Psychologist*

Plaintiffs introduced the testimony of Dr. Dennis Harrison who had been qualified as an expert in psychology and child abuse and who had spent over one hundred hours examining and working with Hilary Foretich. The district court permitted Dr. Harrison to give his opinion as to Hilary's abuse but excluded all out-of-court statements which Hilary had made to him.

Plaintiffs contend that Dr. Harrison should have been allowed to repeat statements made by Hilary as statements for purposes of medical diagnosis or treatment. Fed.R.Evid. 803(4).

Defendants respond that this testimony was properly excluded because of Hilary's incompetence to testify as a witness and because Dr. Harrison was sought more for the purpose of his testimony than his treatment. Defendant's arguments are without merit.

---

**16.** *See* Note, *supra,* note 11 at 1751.

The hearsay exception for statements made for purposes of medical diagnosis or treatment is based on the rationale that "the declarant's motive guarantees [the statements'] trustworthiness" since treatment will depend on what is reported. Weinstein & Berger, *supra*, at 803–144. The two-part test set forth for admitting these hearsay statements is (1) "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment"; and, (2) "the content of the statement must be such as is reasonably relied on by a physician [17] in treatment or diagnosis." *United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985).

In *Renville*, the Court applied Rule 803(4) to an intrafamily child abuse case such as the one at hand and permitted the physician to testify both to the victim's statements of abuse and to the victim's identity of her assailant. *Id.* The Court concluded that not only would the young victim have a motive consistent with the purpose of treatment, but also, "Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment." *Id.* at 436. We agree with the judgment of the Eighth Circuit that "[s]exual abuse of children at home presents a wholly different situation" from that normally encountered in Rule 803(4) cases and that situation requires great caution in excluding highly pertinent evidence. *Id.* at 437.

Defendants contend that Hilary's incompetence to testify as a witness in court renders her statements made for the purposes of diagnosis or treatment inadmissible. This argument must fail.

An individual's statements made for purposes of medical diagnosis or treatment have frequently been admitted into evidence regardless of whether that individual was competent to testify at trial. For instance, a physician has been allowed to testify to statements made by a victim of child abuse even though the child was only three years old and "could not have been subjected to cross-examination." *Nick*, 604 F.2d at 1201–1202. *See also United States v. Shaw*, 824 F.2d 601 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988) (Physician allowed to testify to statements made by nine year old victim); *United States v. DeNoyer*, 811 F.2d 436 (8th Cir.1987) (Social workers allowed to testify under 803(4) to statements made by a five year old victim); *Renville*, 779 F.2d 430 (Physician allowed to testify to statements made by eleven year old victim); *Iron Shell*, 633 F.2d 77 (Physician allowed to testify to statements made by nine year old victim).

The fact that a young child may be incompetent to testify at trial affects neither prong of the two-part test for admitting evidence under 803(4). First, a young child will have the same motive to make true statements for the purposes of diagnosis or treatment as an adult. Indeed, at least one court has been influenced by the notion that this motive may be stronger on the part of the child: "The age of the patient [nine] also mitigates against a finding that [her] statements were not within the traditional rationale of the rule." *Iron Shell*, 633 F.2d at 84.

Second, the statements of a child are "reasonably relied on by a physician in treatment or diagnosis." *Renville*, at 436. A physician certainly does not cease to listen to a patient's complaints simply because that patient is a child. In fact, as noted by the court in *Renville*, a physician

---

**17.** Statements to psychiatrists or psychologists are admissible under 803(4) the same as statements to physicians. The advisory committee note to Rule 803(4) states that "[u]nder the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included." Fed.R. Evid. 803(4) advisory committee's note. There is no reason to exclude psychiatrists or psychologists from this list and the courts have not done so. *See,* Annotation, *Admissibility of Statements Made for Purposes of Medical Diagnosis or Treatment As Hearsay Exception Under Rule 803(4) of the Federal Rules of Evidence,* 55 A.L. R.Fed. 689, 699 (1981); *United States v. LeChoco,* 542 F.2d 84, 89, n. 6 (D.C.Cir.1976) ("The defendant's statements to his psychiatrist fall within the statement to a physician exception to the hearsay rule embodied in Rule 803(4)").

in determining treatment may rely on factors in child abuse cases such as an assailant's identity that would not be relied on were the patient an adult.

Hilary's statements for purposes of diagnosis or treatment should have been admitted into evidence regardless of her competency to testify at trial.

■ Defendant's contention that Hilary's statements to Dr. Harrison are inadmissible because Dr. Harrison was consulted in order to testify as a witness rather than for treatment is without merit. Rule 803(4) "abolished the [common-law] distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only: the latter usually refers to a doctor who is consulted only in order to testify as a witness." *Iron Shell*, 633 F.2d at 83.[18] Dr. Harrison's testimony to statements made by Hilary are therefore admissible regardless of why he was consulted.

We find no reason to justify the exclusion of statements made by Hilary to Dr. Harrison. Such statements should have been admitted as statements made for the purposes of medical diagnosis or treatment under 803(4).

### VI.

#### Defendants' Counter-claims and Cross-appeals

Defendants filed counter-claims against Dr. Morgan for defamation, publication of private facts, false light publicity, and intentional infliction of emotional distress arising out of publicity surrounding this litigation. The jury found for Dr. Morgan on defendants' counter-claims and defendants have appealed this judgment. Defendants have pointed to no error committed by the district court and the judgment in favor of Dr. Morgan on defendants' counter-claims is affirmed.

■ Additionally, defendants have cross-appealed from the district court's refusal to dismiss Dr. Morgan's claim for the intentional infliction of emotional distress. Defendants argue that Dr. Morgan failed to state a cause of action since she was never present when acts of abuse were perpetrated on Hilary.

The requisite elements for a cause of action for the intentional infliction of emotional distress are delineated in *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974). *Womack* does not require, and defendants have pointed to no Virginia case, which would require that a plaintiff such as Dr. Morgan be present during the outrageous conduct in order to recover for the intentional infliction of emotional distress. The district court acted properly in refusing to dismiss this cause of action.

Finally, defendants have cross-appealed from the district court's refusal to grant a directed verdict in favor of the grandmother, Doris Foretich. As counsel for plaintiffs agreed at oral argument that Doris Foretich could be dismissed from this action, this issue need not be further addressed.

Accordingly, the judgment of the district court is reversed and remanded in part and affirmed in part.

**REVERSED AND REMANDED IN PART and AFFIRMED IN PART.**

POWELL, Associate Justice, United States Supreme Court (Retired), concurring in part and dissenting in part.

I join Parts I–IV and Part VI of the court's well-reasoned opinion. As I have

---

**18.** *See also O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d Cir.1978) ("Rule 803(4) clearly permits" statements made to a non-treating physician); Fed.R.Evid. 803(4) advisory committee's note ("Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation"); Weinstein & Berger, *supra*, at 803–146 ("Rule 803(4)) rejects the distinction between treating and nontreating physicians"); Annotation, *supra*, note 17 at 692, ("[S]tatements made to a physician consulted only for the purpose of allowing him to testify are now admissible under the Rule.")

some doubt as to the admissibility of the testimony of the psychologist, Dr. Harrison, I write separately on that question. At the outset, I refer to the applicable standard of review when a district court's decision to exclude evidence is at issue.

### A

Few cases are more difficult to try than one of child abuse where the child is very young and does not testify in court. Moreover, there is rarely a non-party witness to alleged child abuse, with the result that rulings on admissibility of evidence on behalf of the child are particularly sensitive. This was such a case, and it was tried by an able and experienced district court judge. It must be remembered that, in addition to assuring the fair presentation of a plaintiff's case, the district court has the responsibility of shielding defendants from the admission of unduly prejudicial evidence. This Circuit has recognized that a district court's determination to admit or exclude evidence is not to be disturbed unless it has "abused its discretion." *United States v. MacDonald*, 688 F.2d 224, 227–28 (4th Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). Accordingly, our review on this appeal is limited to a determination of whether the district court abused its discretion in excluding certain evidence offered on behalf of the appellants Hilary Foretich ("Hilary") and her mother, Dr. Elizabeth Morgan. As noted above, I am in complete agreement with the court's analysis and conclusion that the district court should have admitted evidence of the physical abuse of Hilary's half-sister Heather and certain out-of-court "excited utterances" made by Hilary to her mother. The district court's decision not to admit statements made by Hilary to the psychologist, Dr. Dennis Michael Harrison, Ph.D., presents a closer question. I write to address it.

### B

The leading cases relied on by the court today are *United States v. Renville*, 779

F.2d 430 (8th Cir.1985) and *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). In these cases, and all the other cases cited by the court on this issue, the Eighth Circuit upheld the district court's evidentiary rulings. In this case the court disagrees with the court's evidentiary rulings below.

The court's holding that the district court abused its discretion in excluding statements made to Dr. Harrison by Hilary is based on an application of the analysis used by the *Renville* and *Iron Shell* courts in applying Fed.R.Evid. 803(4). Rule 803(4) contains a hearsay exception applicable to statements made to a physician for purposes of diagnosis or treatment.[1] At common law, this exception traditionally was based on a dual rationale. First, the declarant's purpose in making the statement normally assures its trustworthiness because diagnosis and treatment may depend on what the patient tells the physician. Secondly, a fact reliable enough to serve as a basis for a physician's diagnosis or treatment generally is considered sufficiently reliable to escape hearsay proscription. Thus, if the declarant's motive in making the statement is consistent with the purpose of promoting treatment, and the content of the statement is reasonably relied on by a physician in formulating a diagnosis or mode of treatment, then the statement presumptively is admissible.

Although the courts in *Iron Shell* and *Renville* would appear to allow the admission of statements made to a physician who is seeking a diagnosis in preparation for litigation, they explicitly hold that "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment...." *Renville*, 779 F.2d at 436. *See also Iron Shell*, 633 F.2d at 84. In *Renville*, the court found that:

> Before questioning the child, [the physician] explained to her that the examination and his prospective questions were necessary to obtain information to treat

---

1. No distinction has been made where the statements in question were made to a psychologist

rather than a physician. *See* Fed.R.Evid. 803(4) advisory committee's note.

her and help her overcome any physical and emotional problems which may have been caused by the recurrent abuse. 779 F.2d at 438. Therefore, "in the circumstances of this case, there were sufficient indicia of the declarant's proper motivation to ensure the trustworthiness of her statements to the testifying physician." *Id.* at 439. In *Iron Shell*, the court stated that "[w]e find no facts in the record to indicate that [the child's] motive in making these statements was other than as a patient seeking treatment." 633 F.2d at 84. Therefore, in each of these cases the court found that the statements met both prongs of the traditional common-law test.

A significant difference found in this case is that, at the time Hilary was questioned and examined by Dr. Harrison, she was only four years of age. There is no evidence in the record that her frame of mind was comparable to a patient seeking treatment. Moreover, in contrast to the circumstances in *Renville*, there is no evidence that Dr. Harrison ever explained to Hilary that his questions and relationship with her arose, at least in part, from a desire to treat her. Thus, an important element contributing to the reliability of "physician treatment" statements that was explicitly found to be present in both *Renville* and *Iron Shell*, i.e. the strong motive for the declarant to tell the truth in order to promote treatment, has not been established in this case. Absent a finding that Hilary made her statements believing they would be used by Dr. Harrison to help her, I am reluctant to rest my decision on the cases relied on by the court.

In light of the facts before the court in this case, I think it is preferable to rely on a strict application of Rule 803(4) of the Federal Rules of Evidence. Rule 803(4) appears to have abolished the common-law distinction between those statements made while consulting a "physician" for purposes of examination and statements made while consulting him for purposes of testifying as a witness. The Second Circuit has held that, in light of the Advisory ·Committee Notes to Rule 803(4), so long as the statements made by an individual were relied on by the physician in formulating his opinion, they are admissible. *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d Cir.1978). *See also* Weinstein & Berger, Evidence ¶ 803(4) [01]. Although this holding ignores the traditional common-law prong of the rule that requires that the statements be made for the purposes of seeking treatment, it has clear support in the Advisory Committee Notes to Rule 803(4).[2]

It is appropriate to recognize, however, that evidence admitted under the standard discussed by the Second Circuit and the Advisory Committee Notes has less inherent reliability than evidence admitted under the traditional common-law standard underlying the physician treatment rule. The professional objectivity of a physician responsible for treatment may well be greater than that of a witness employed and paid to testify as an expert. More importantly, the veracity of the declarant's statements to the physician is less certain where the statements need not have been made for purposes of promoting treatment or facilitating diagnosis in preparation for treatment. In my view, an appellate court should be reluctant to disturb the discretion of a district court that has excluded such testimony on the ground that its prejudicial effect outweighs its probative value. *See* Fed.R.Evid. 403. But in this case, the reasons for exclusion by the district court are not clear. In excluding Dr. Harrison's testimony as to what Hilary told him, the court appeared to rely, without further elaboration, only on the facts that "[Hilary] isn't here and her age and the circumstances of the case." (J.A. at 115). In light of

**2.** These Notes explain that, at common law, statements made to a physician consulted only for the purpose of enabling him to testify were not admissible as substantive evidence. Rule 803(4) rejects this limitation because a physician, as an expert, is allowed to state the basis of his opinion, including statements of this kind. This calls for a distinction that juries are unlikely to make, and therefore the limitation has been abolished.

In a civil case, where there is no Confrontation Clause problem, it was within Congress' discretion to approve a rule authorizing the admission of whatever evidence it thought appropriate, absent a due process violation.

Rule 803(4), and the importance of these statements to appellants' case, these reasons are insufficient to justify exclusion of the evidence.

Rather than conclude, however, that Dr. Harrison's testimony should have been admitted into evidence, I would leave this question for reconsideration at the retrial of this case, if there should be a retrial.