### UNITED STATES of America

v.

### Nathan Dante YOUNG, Defendant.

### No. Crim. 99–201–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 13, 1999.

Justin Weisner Williams, Thomas Gerard Connolly, Assistant United States Attorneys, U.S. Attorney's Office, Alexandria, VA, for plaintiff.

Charles Warren Kramer, Carter, Kramer & Ragland PC, Alexandria, VA, Joseph N. Bowman, Alexandria, VA, Joseph John McCarthy, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is a prosecution for kidnapping resulting in death,[1] interstate stalking resulting in death,[2] and two counts of causing death of a person through the use of a firearm in a crime of violence.[3] At issue on a pretrial motion in limine is the admissibility of certain evidence of "other crimes, wrongs, or acts" pursuant to Rule 404(b), Fed.R.Evid.

**I.**

The indictment charges defendant Nathan Dante Young with the abduction, shooting and killing of Diana Medina. Defendant allegedly abducted the victim on or about September 9, 1997 in Clinton, Maryland. The victim's body was not found until September 13, 1997, when a Virginia Department of Transportation maintenance worker discovered it near Interstate 66 in Fauquier County, Virginia.

At trial, the government intends to prove that defendant used a rental car, a 1998 Chevy Malibu, in commission of the crime. In this regard, the government will show that on September 10, 1997, defendant reported to the police that the Malibu had been stolen from the parking lot of his grandmother's apartment building complex, and that on the same day, a Maryland State Trooper found the Malibu in flames, three-quarters of a mile from the building complex. (This fire is hereinafter referred to as "Fire No. 1"). One year later, in what would seem to be a remarkable coincidence, defendant reported yet another car theft, this time the theft of his own car, a 1994 Toyota Camry, stolen from his neighborhood. Three days later, a Prince George's County Police Officer discovered defendant's car destroyed by fire, slightly over one and one-half miles from defendant's home. (This fire is hereinafter referred to as "Fire No. 2").

As to Fire No. 1, the government forecasts that circumstantial evidence will show (i) that defendant is linked to the vehicle, (ii) that the car was destroyed by arson rather than accident, and (iii) that defendant committed the arson and fabricated the theft story. Specifically, the government intends to demonstrate that defendant was in control of the car prior to its burning by presenting evidence that he rented it and that he used it to give the victim a ride on the day she disappeared. To show that arson rather than accident

---

1. *See* 18 U.S.C. § 1201(a).

2. *See* 18 U.S.C. § 2261A.

3. *See* 18 U.S.C. § 924(c), 924(j).

caused the fire, the government will produce expert testimony to that effect, as well as evidence that the fire neither started in, nor damaged, the Malibu's engine compartment. Defendant's fabrication of the theft will be shown by "contradictory evidence and statements" from defendant regarding property missing from the Malibu after it was found by the police. And finally, as evidence that defendant set the fire, the government will argue that defendant's motive to do so was clear: he burned the car to destroy evidence of his crimes. The parties do not dispute the relevance of this evidence; Fire No. 1 and defendant's explanation for it are plainly part and parcel of the charged conduct and if proved, are probative of defendant's guilt.

What the parties do sharply dispute is the relevance and admissibility of Fire No. 2 and its attendant circumstances, including defendant's explanation for it. In essence, the government seeks to introduce Fire No. 2 for the purpose of casting doubt on defendant's innocent explanation for Fire No. 1. Significantly, in contrast with its evidence as to Fire No. 2, the government has little, if any, direct or circumstantial evidence tending to show that defendant burned his car, fabricated the theft, or had a motive to do either. In this regard, the government will show only that defendant owned and was in control of the car prior to its reported theft and destruction. In addition, the government intends to offer defendant's taped interview with the Maryland Automobile Insurance Fund concerning Fire No. 2, which the government contends reflects defendant's "hesitation and momentary confusion as to when the defendant last left his Camry," and the testimony of the police officer who, it is said, will indicate that the circumstances of the theft and report were "unusual." No evidence will be offered to show that defendant had a motive either to fabricate the theft of the Camry or to destroy it.

In short, the question presented is whether the government may introduce evidence of Fire No. 2 to diminish the credibility of defendant's innocent explanation for Fire No. 1, specifically, that Fire No. 1 was the product of casualty or the act of someone other than himself.

## II.

■ Analysis properly begins with recognition of the following governing principles. First, relevant evidence is admissible unless specifically proscribed by the Federal Rules of Evidence. *See* Rule 402, Fed.R.Evid. One such category of specifically proscribed evidence is evidence of another act committed by a person when offered to show that the person has the propensity or character to commit the same act in another instance. *See* Rule 404(b), Fed.R.Evid. Significantly, however, evidence of other acts may be admitted for reasons not related to the person's character, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), Fed.R.Evid.; *see Westfield Insur. Co. v. Harris,* 134 F.3d 608, 614 (4th Cir.1998).[4] And, even evidence of another act, offered for a permissible purpose under Rule 404(b), must nonetheless be excluded if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice,[5] confusion of the issues, or misleading the jury." Rule 403, Fed.R.Evid.

In the instant case, evidence of Fire No. 2 clearly fits within Rule 404(b); it is

---

**4.** When admitting evidence of other acts, a trial judge, if requested to do so, should instruct the jury that they are to consider the evidence of the act only for the purpose for which it is admitted, and not as evidence of the actor's character or propensity to commit similar acts. *See Sparks v. Gilley Trucking Co., Inc.,* 992 F.2d 50, 52 (4th Cir.1993); Rule 105, Fed.R.Evid.

**5.** The Fourth Circuit has frequently defined unfair prejudice as "a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Ham,* 998 F.2d 1247, 1252 (4th Cir.1993) (citation omitted).

evidence offered not for the purpose of showing bad character or propensity, but for the permissible purpose of showing defendant's plan or intent concerning Fire No. 1. So viewed, it would appear that evidence of Fire No. 2 is relevant. But, as *Huddleston v. United States* teaches, this does not end the analysis as an extrinsic similar act is admissible only if the jury, based on all the evidence before it, could reasonably conclude by a preponderance of the evidence both that the act actually happened and that the defendant committed the act. *See* 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). When the relevance of an extrinsic act is contingent on proof of a fact, the trial judge may not allow the jury to consider the similar act unless there is evidence by which the jury could find by a preponderance that the fact is true. Rule 104(b), Fed.R.Evid.; *see also Huddleston*, 485 U.S. at 689–90, 108 S.Ct. 1496.[6]

■ On the current record as a whole, including the government's forecasted evidence as to Fires Nos. 1 and 2, the evidence as to Fire No. 2 does not rise to the level prescribed by *Huddleston* for admissibility. *Huddleston* held that the trial judge need not make a preliminary finding that the offering party has met its burden of proving the proffered similar act by a preponderance of the evidence, but the judge must still determine whether a *jury* could make such a determination. Though the trial judge must not consider the credibility of the evidence presented in making this determination, the judge must still determine whether there is sufficient evidence for the jury's consideration.[7] In this regard, the government correctly notes that Fire No. 1 and its attendant circumstances may be considered and weighed in determining whether defendant set Fire No. 2.[8] *See Huddleston*, 485 U.S. at 691, 108 S.Ct. 1496. Also, the government argues that the so-called "doctrine of chances" suggests that where acts similar to one another occur in sequence to the same person, and there is both an invidious explanation, such as intent to destroy, and an innocent explanation, such as casualty, for the happening of each act, the innocent explanation for the act's occurrence loses credibility.[9] Yet, the govern-

---

6. Rule 104(b) provides, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

7. In *Huddleston*, the central factual issue was whether defendant *knew* that the videotapes he sold were stolen. That the tapes actually were stolen was not in dispute. 485 U.S. at 683, 108 S.Ct. 1496. To prove that defendant had knowledge that the tapes were stolen, the government introduced evidence that defendant had sold televisions which, because of their low price and other suspicious circumstances, were probably stolen. *Id.* The Supreme Court held that based on the evidence defendant had sold other stolen property, including the tapes that were the subject of the charge, as well as a shipment of appliances, also known to be stolen property, the jury could reasonably conclude that the television sets were stolen. *Id.* at 691, 108 S.Ct. 1496.

8. While this reasoning, at first blush, has all the earmarks of spurious bootstrapping, a moment's reflection confirms this is not so. To be sure, there is no way for a jury to conclude that the government's theory of Fire No. 2 is true, and therefore relevant to their theory of Fire No. 1, without concluding that the government's theory of Fire No. 1 is correct—which is, of course, exactly what the government seeks to prove in the first place. Nonetheless, *Huddleston* contemplates precisely this form of reasoning, and sensibly so because the jury will itself consider the entire record in deciding the weight and effect of the evidence concerning Fire No. 2. *See* 485 U.S. at 691, 108 S.Ct. 1496 (noting that the trial judge is to consider all the evidence presented to the jury, including the subject matter of the charges, in determining whether there is sufficient evidence of the similar act for the jury's consideration).

9. *See* 2 J. *Wigmore on Evidence* § 302. Insurance fraud provides the clearest application of this doctrine. A person's innocent explanation for the burning down of his house is made that much less likely if the same person has filed several claims in the past, under suspicious circumstances, for damage or destruction of his home from fire. *See Westfield Insur. Co. v. Harris,* 134 F.3d 608, 614 (4th Cir.1998).

ment's heavy reliance on this doctrine is unwarranted. Although there is a striking similarity between the two acts, the government has failed to identify any other direct or circumstantial evidence suggesting that defendant burned his Camry, and the government has indicated it will not even present evidence that defendant had any motive to burn his car.[10] In any event, the government does not claim defendant's motive was the same in both fires.[11] In short, the government's forecasted evidence as to both fires does not rise to the threshold required by *Huddleston* for Fire No. 2.

■ Nor is the government's evidence that defendant was in control of the car in the time prior to Fire No. 2 probative of whether he was responsible for Fire No. 2.[12] The fact of custody of a car prior to its theft and destruction by fire does not im-

plicate the custodian in fraud and arson. The government has also proffered two additional pieces of circumstantial evidence in the form of expected evidence and testimony regarding Fire No. 2, but neither is probative of whether defendant burned his own car. The first is the taped interview between defendant and the Maryland Automobile Insurance Fund, in which the defendant's voice "reflects hesitation and momentary confusion as to when the defendant last left his Camry." The second is testimony of the police officer who responded to defendant's larceny report, and who will testify to the "highly unusual circumstances" surrounding defendant's report. *Id.* Even if admissible,[13] this is thin stuff—it is probative of little more than the existence of suspicious circumstances; it does not suggest defendant set the fire, invented the theft, or had a motive to do either. This evidence, even

**10.** Significantly, in other Rule 404(b) similar acts cases, including those applying the "doctrine of chances," the party offering the evidence of extrinsic acts has provided much more evidence of the other acts than the government has done in this case. *See Huddleston v. United States,* 485 U.S. at 682–83, 108 S.Ct. 1496 (extensive circumstantial evidence that television sets were stolen in addition to evidence of defendant's transactions involving other goods actually proven to be stolen); *Westfield Insur. Co. v. Harris,* 134 F.3d 608, 614–15 (4th Cir.1998) (noting that the insured had made "at least seven prior fire claims, several of which were highly suspicious," including two in which the insured was seen leaving the scene "mere minutes before the fire was discovered"); *United States v. Queen,* 132 F.3d 991, 993 (4th Cir.1997) (Rule 404(b) similar acts would be proved by the direct testimony of witnesses); *Morgan v. Foretich,* 846 F.2d 941, 943 (4th Cir.1988) (in holding that evidence of defendants' abuse of plaintiff's sister was admissible in child sexual abuse case, the panel noted that the manner and method of abuse was similar for both girls, and that there were "numerous ... professionals and lay witnesses who were prepared to testify that [the sister] had been sexually abused during visitation periods with the defendants"); *United States v. Woods,* 484 F.2d 127, 130–35 (4th Cir.1973) (noting that an "unmistakable pattern" emerged after *nine* incidents of children dying of mysterious causes while in the custody of the defendant, even though some incidents standing alone were "less conclusive than others"). Two

data points, which is all the government has in this case, do not suggest an "unmistakable pattern."

**11.** Evidence of similar motives would make the evidence of the two fires more congruent and hence more probative of defendant's culpability. *See, e.g., Westfield,* 134 F.3d at 614–615 (fraudulent scheme to claim insurance proceeds was the common motive tying together multiple fires).

**12.** The government cites *United States v. Woods,* 484 F.2d 127 (4th Cir.1973), and *Morgan v. Foretich,* 846 F.2d 941 (4th Cir.1988), for the proposition that control of each vehicle in the days prior to the fires is a sufficient link between defendant and each car's destruction. Both *Woods* and *Morgan,* however, discuss abuse of *children* while in the care and custody of the person in question. Custody of children is much different than custody of a car, for obvious reasons. A child, for example, would not be left on the street all night, and hence subject to being stolen.

**13.** The admissibility of the officer's lay opinion that the situation was "unusual" is not free from doubt. *See* Rule 701, Fed.R.Evid. (opinion testimony of lay witness admissible only if it is (i) rationally based on witness's perceptions *and* (ii) helpful to understanding the witness's testimony). Nothing in the government's submission suggests the officer will be offered as an expert.

in combination with the other evidence, invites the jury to speculate as to the cause of Fire No. 2 and defendant's possible motives for setting the fire. A jury's role is not to speculate, but to consider and weigh evidence. *See Hurley v. Patapsco & Back Rivers Railroad Co.,* 888 F.2d 327, 330 (4th Cir.1989).

■ Even assuming, *arguendo,* that the current record, including the forecasted evidence as to Fires Nos. 1 and 2, met the *Huddleston* admissibility standard, the probative value of the evidence, at this point, is substantially outweighed by both the danger of unfair prejudice and the potential for jury confusion. *See* Rule 403, Fed.R.Evid. As to prejudice, the Fourth Circuit has said that unfair prejudice arises with evidence posing "a genuine risk that the emotions of the jury will be excited to irrational behavior." *United States v. Ham,* 998 F.2d 1247, 1252 (4th Cir.1993) (citation omitted). The probative value of the government's evidence, even if admissible on this record, is very slight. The bulk of the government's argument for their theory as to Fire No. 2 rests on the circumstances of Fire No. 1. While the "doctrine of chances" may allow the jury to infer from the happening of two unusual events that an innocent explanation for those events is less credible, the danger exists that the jury will simply conclude that defendant is a bad person who sets fire to cars. Although a limiting instruction often suffices to cure evidence of its prejudice, in this case the distinction between the purposes for which the jury may and may not consider the evidence is so fine that there is a substantial risk that unfair prejudice may not be erased by such an instruction.

Second, evidence of Fire No. 2 will unnecessarily confuse the issues, a confusion that would substantially outweigh any slight probative value evidence of Fire No. 2 may have. To prove that defendant set Fire No. 2, the government will ask the jury to consider circumstantial evidence that, at best, only very weakly links defendant to that fire. There would be, in

effect, a trial within the trial concerning defendant's role in Fire No. 2, "inject[ing] so many collateral issues into the case that the jury would lose sight of its duty." *United States v. Silverman,* 745 F.2d 1386, 1398 (11th Cir.1984). In these circumstances, the potential for jury confusion is manifest. *Cf.* Weinstein's Federal Evidence § 403.05[3][b] (1999).

In sum, at present, there is insufficient evidence in the record as a whole, including the forecasted evidence as to Fires Nos. 1 and 2, for a reasonable jury to find by a preponderance of the evidence that Fire No. 2 was caused by defendant and that his innocent explanation for it is false. Accordingly, evidence as to Fire No. 2 is not currently admissible, and the government may neither mention Fire No. 2 in its opening statement, nor proceed to present evidence of the circumstances of Fire No. 2. Yet, nothing in this ruling precludes the government from adducing additional evidence bearing on Fire No. 2. Should this occur, the government has leave to submit this additional evidence and seek reconsideration of this issue. In those circumstances, it may be appropriate to revisit the admissibility calculus to ascertain whether, in view of the additional evidence, the *Huddleston* admissibility standard is met as to Fire No. 2.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record. An appropriate order will enter.