50 F.3d 7
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carl E. SIMMONS, Plaintiff-Appellant,
v.
R.J. SCOTT; The City of Roanoke, Defendants-Appellees.
 No. 94-1035.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 30, 1995.
Decided Mar. 20, 1995.
 
 ARGUED: Oldric Joseph LaBell, Jr., Newport News, VA, for appellant. William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellees. ON BRIEF: Melissa W. Scoggins, Gregory J. Hale, Gentry, Locke, Rakes & Moore, Roanoke, VA; Wilburn C. Dibling, Jr., William X. Parsons, Office of the City Attorney, Roanoke, VA, for appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Carl E. Simmons appeals an adverse jury verdict in this Sec. 1983 action alleging excessive force during his arrest by Officer R.J. Scott and a failure to train on the part of the City of Roanoke, Virginia (the City). Simmons challenges four of the district court's rulings below. First, Simmons contests the district court's determination that prior complaints against Officer Scott for excessive force could not be introduced into evidence under Federal Rule of Evidence 404(b). Second, he argues that the district court should have granted a new trial based on defense counsel's improper references to Simmons's prior convictions. Next, Simmons contends that the district court erred in refusing to give the jury an instruction on gross negligence. Finally, he argues that the district court should have granted his post-trial motion for a new trial based on newly discovered evidence. For the reasons explained below, we affirm the district court on all grounds.
 
 I.
 
 2
 Often, opposing parties in a legal dispute present similar versions of the facts with only slight differences in legally significant areas. In this case, however, Simmons's and Scott's stories are vastly different. According to Officer Scott, on February 3, 1992, he was on patrol when he noticed a car driving without its lights on. The driver of this car was later identified as Simmons. Scott turned on his flashing lights, signaling for Simmons to stop his car and pull over. Simmons complied--until Scott exited his car and began to approach Simmons, at which point Simmons accelerated. Scott returned to his car and pursued Simmons in a high speed chase. Once again, Simmons brought his car to a stop. Scott exited his car to approach Simmons's vehicle and, again, Simmons drove away.
 
 
 3
 Finally, Simmons ended the chase. When Scott approached the car, he noticed Simmons rolling up the window. As a distraction technique, Scott rapped the window with his hand, and then flung the car door open. Immediately, Simmons turned to the passenger side of the car, reaching for something on the floor. According to his trial testimony, Scott believed that Simmons was reaching for a weapon, so he drew his pistol. Simmons grabbed at Scott's pistol and a struggle ensued. As a result of the struggle, which Scott testified lasted only a few moments, the pistol discharged. Simmons's injuries were severe.* A bullet traveled through Simmons's face, causing blindness in his left eye, partial loss of hearing, and a partial loss of ability to open his jaw.
 
 
 4
 Simmons tells a completely different story about how his injuries occurred. He admits that he took a couple of blocks to come to a stop after Scott signaled to him. When he stopped, however, Simmons claims that Officer Scott emerged from his squad car with his pistol drawn. Because he was frightened, Simmons claims that he rolled his window up all the way. Simmons testified that Scott approached the car, tapped his pistol against Simmons's window, and ordered Simmons to roll his window down. Simmons testified that he obeyed, rolling his window down 4-5 inches. According to Simmons, Scott then began to tap the barrel of his pistol on top of the rolled down window glass when, suddenly, the pistol discharged into Simmons's head.
 
 
 5
 As a result of this incident, on November 12, 1992, Simmons filed this action, pursuant to 42 U.S.C. Sec. 1983, against Scott and his employer, the City of Roanoke. During discovery, Simmons unearthed several prior complaints against Scott for use of excessive force. Based on this information, Simmons filed a second amended complaint on August 16, 1993. The district court denied the City's motion for summary judgment on September 13, 1993. In doing so, the court noted that the complaints against Scott helped to create a genuine issue of material fact as to the City's liability. At a hearing two days later, however, the district court determined that the prior incidents of excessive force were not admissible against Scott personally. Therefore, the court bifurcated the trial. The first stage would try the excessive force claims against Officer Scott individually, and if he were found guilty, the second stage would try the failure to train claims against the City (in which the evidence of prior complaints against Scott would be admissible). Finally, at the pre-trial hearing, the court refused to allow Scott to introduce Simmons's prior drug convictions and a conviction for taking indecent liberties with a minor. The court did agree, however, to admit the indecent liberties conviction for impeachment purposes so long as defense counsel only referred to the conviction as a "felony." (J.A. 90.)
 
 
 6
 Trial was held on September 20-23, 1993. During cross-examination of Simmons, Scott's counsel referred to both the indecent liberties conviction and the drug conviction. Simmons immediately moved for a mistrial. The district court denied the motion. After both parties had rested, the district court denied Simmons's request for a jury instruction on a pendant state law claim of gross negligence. After the court submitted the Sec. 1983 and state law intentional tort claims, the jury returned a verdict for Scott on both counts. After trial, Simmons moved for a new trial, claiming that he had encountered another witness shortly before the case went to the jury who claimed that she had heard Scott say he liked to harm arrestees who gave him a hard time during arrest. The district court denied this motion. Simmons appealed in a timely fashion.
 
 II.
 
 7
 Simmons argues that the district court should have admitted previous complaints for excessive force against Officer Scott into evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Simmons asserts that because Scott claimed that the gun accidently fired in the midst of a struggle, these incidents would serve to rebut Scott's story by showing a "lack of accident" and "intent," as permitted under Rule 404(b). Although we normally give district courts a wide berth when allowing Rule 404(b) testimony into evidence, see Kopf v. Skyrm, 993 F.2d 374, 380-81 (4th Cir.1993), we have always encouraged close scrutiny of whether similar act testimony should be admitted. In Morgan v. Foretich, 846 F.2d 941 (4th Cir.1988), we stated that "[t]he threshold requirements for admitting evidence under Rule 404(b)" are "(a) whether the proffered evidence is relevant to an issue other than the defendant's character, and (b) whether the probative value . . . substantially outweighes . . . its prejudicial effect." Id. at 944 (emphasis in original). A district court's decision not to admit evidence under this test is reversible only if there is an abuse of discretion. Id. at 945.
 
 
 8
 Although the facts render this a close call under Rule 404(b), we find no abuse of discretion. The district court properly examined the proffered evidence and determined that it could not be introduced against Scott in his personal capacity for two reasons. First, the court found that not all of the proffered acts were similar enough to be probative of Scott's intent. For instance, Simmons tried to admit an incident in which Scott was suspended for arresting someone as a "practical joke." Although Scott violated the department's internal rules in this incident, Scott's intent in playing a practical joke is not the same as his intent to cause harm in an excessive force claim. Unless the acts are similar to the one at issue, they show only bad character--which goes to the heart of what Rule 404 prohibits. Second, every "similar act" took place at least five years before the incident in question. The district court concluded that this remoteness in time severely impacted on the probativeness and reliability of the evidence. See Patterson v. McLean Credit Union, 805 F.2d 1143, 1147 (4th Cir.1986) (noting that the remoteness in time of similar acts evidence weighed against its probative nature). We note that the district court did allow evidence of Scott's most recent similar act concerning a 1987 incident in which Scott needlessly choked a restrained arrestee. Under these facts, the district court had sound reasons for refusing to admit the evidence of earlier complaints against Scott. We cannot say that it abused its discretion, and, therefore, we affirm.
 
 III.
 
 9
 In a separate evidentiary ruling, the district court refused to admit into evidence Simmons's previous drug convictions or his conviction for taking indecent liberties with a minor. Counsel for Scott, however, managed to mention both of these convictions in front of the jury, and, in response, Simmons moved for a mistrial and a new trial. The district court denied these motions.
 
 
 10
 Simmons argues that both the admission of the indecent liberties conviction during his cross-examination and the references to his drug convictions during Scott's closing argument prejudiced him enough to require a new trial. When a motion for a new trial is made because a party discussed excluded evidence in the presence of the jury, we do not reverse a district court's refusal to grant that motion unless the district court's actions amounted to a "prejudicial abuse of discretion." See Arnold v. Eastern Air Lines, 681 F.2d 186, 197 (4th Cir.1982), cert. denied sub nom., Aetna Casualty & Surety Co. v. United States, 460 U.S. 1102 (1983). Reviewing courts must look at "the 'totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.' " Id. (quoting City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir.1980)). With these factors in mind, we look at each of defense counsel's misstatements to determine whether the district court should have granted a new trial.
 
 A.
 
 11
 Simmons first argues that attempted use of his indecent liberties conviction during his cross-examination merited a new trial. Although the district court had ruled that defense counsel could attempt to impeach Simmons by asking about his conviction for taking indecent liberties with a minor, the court refused to allow defense counsel to mention the conviction by name. Instead, the court ruled that counsel could only refer to it as a "felony." During cross examination, however, defense counsel asked Simmons whether he "had a conviction of indecent liberties." (J.A. 172). Before he could answer, Simmons's counsel objected and the jury was excused. The court appropriately sustained Simmons's objection, and as soon as the jury returned, the court gave a lengthy curative instruction. Nevertheless, Simmons asked for a new trial.
 
 
 12
 We do not believe that the district court erred in denying Simmons's motion. Applying the Arnold factors, and especially looking to the nature of the comments, their frequency, and the way the parties and the court treated them, we find that defense counsel's question to Simmons did not unduly prejudice the jury. First, the encounter lasted only a few seconds, and the offense was never repeated in front of the jury. Second, Simmons did not answer the question, so the jury never discovered whether he actually was convicted of the charge. Third, the district court quickly instructed the jury to disregard the question not because it was prejudicial, but rather because it was "inaccurate." (J.A. 175.) Because we presume that the jury will follow a curative instruction, Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987), the court alleviated any prejudice that could have resulted from this very short encounter. Viewing the question in light of the totality of the circumstances, we cannot say that Simmons suffered prejudice requiring a new trial.
 
 B.
 
 13
 Next, Simmons argues that defense counsel's mention of his prior drug convictions also merits a new trial. During closing arguments, defense counsel made the following statements:
 
 
 14
 There was some reason why [plaintiff] did not want to comply with the blue lights and to talk to this police officer. It could have been a number of things: cocaine, not wanting to go back to prison, possession of cocaine. We know that's in this case. It was found in the car.
 
 
 15
 The medical record introduced from Roanoke Memorial Hospital, positive for cocaine, positive for Valium. Did that in any way explain the behavior of Mr. Simmons that evening?
 
 
 16
 (J.A. 384). Based on these comments, Simmons moved for a new trial because these statements impermissibly alluded to his prior drug convictions. Again, we look to Arnold, and determine that the totality of the circumstances weighs against Simmons. Everything Scott's counsel stated had already been admitted into evidence without an objection from Simmons. On cross-examination, Simmons admitted that he had served time in prison. Both the police and hospital reports submitted into evidence show that he had cocaine not only in his car, but also in his body. Because defense counsel only reiterated previously admitted testimony, we cannot say that these comments severely prejudiced Simmons. Furthermore, the overwhelming evidence against Simmons buttresses our conclusion that any prejudice he may have suffered from these statements does not require a new trial. Therefore, we find that the district court did not abuse its discretion in denying Simmons's motion for a new trial on these grounds.
 
 IV.
 
 17
 The district court refused to instruct the jury on Simmons's state law theory of gross negligence. The district court gave two reasons for refusing to give the instruction: (1) that Simmons did not properly plead gross negligence in his amended complaint; and, (2) that Simmons failed to present enough evidence of gross negligence to support an instruction. A plaintiff is not entitled to have a theory presented to the jury unless there is sufficient evidence to support it. Brownslow v. Aman, 740 F.2d 1476, 1490 (10th Cir.1984). "The evidence necessary to support an instruction must be more than conjecture and speculation." Id. We conclude that, even if gross negligence were properly pled, the district court correctly refused to give the instruction to the jury because there was no evidence to support it.
 
 
 18
 Simmons did not warrant a gross negligence instruction because all of his evidence on that issue cuts against him. Simmons's theory argues that Scott was grossly negligent in tapping the gun on the top of the window because such behavior could result in discharge of the gun. Although as pled these facts may constitute gross negligence in Virginia, see Frazier v. City of Norfolk, 362 S.E.2d 688, 691 (Va.1987), the record reflects no evidence that Scott's weapon could have accidently discharged. Simmons's own expert witness on firearms, Cecil A. Moorehead, testified that Scott's weapon could not discharge from tapping it on top of the window. He stated that "if you tap the firearm on any object, that object is not going to cause that firearm to go off." (J.A. 232.) Moorehead testified at length as to the gun's "hammer block" mechanism which prevents the gun from discharging unless the trigger is actually pulled with approximately four pounds of force. This was Simmons's own expert and he presented nothing else to establish that the gun could have discharged accidently. Because the gun could not fire under the facts of Simmons's gross negligence scenario unless Scott intentionally pulled the trigger, the district court properly refused to instruct the jury on a gross negligence theory.
 
 V.
 
 19
 After trial, Simmons moved for a new trial based upon the affidavit of Teresa McGee, a former social acquaintance of Scott. She stated that prior to the incident in question she had heard Scott make the following remarks: (1) "[t]hat if a driver went '10-80' on him (failed to stop when signaled) [that person] would go to the hospital before they went to jail"; (2) "[t]hat on quiet nights he on occasion stopped cars and intentionally provoked fights with male occupants so he could beat them up"; and (3) "[w]hen stopping cars at night he would have a gun drawn and cocked as he approached the car." (J.A. 76). Simmons argues that because his counsel did not have a chance to talk with Ms. McGee until almost the last day of the trial, this newly discovered information mandates a new trial. The district court rejected this argument and we affirm.
 
 
 20
 In Boryan v. United States, 884 F.2d 767, 771 (4th Cir.1989), we stated the requirements for granting a new trial in a civil case based on newly discovered evidence:
 
 
 21
 (1) [T]he evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.
 
 
 22
 We review the district court's decision for an abuse of discretion. Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir.1984).
 
 
 23
 We do not believe that Simmons has satisfied the Boryan requirements. First, the evidence was available to Simmons during the trial. Although McGee first contacted Simmons late in the process, we believe that Simmons was able to ascertain the nature of McGee's information so that he could have made a considered decision whether or not to introduce her testimony. Second, even if this evidence were truly "newly discovered," it certainly was not "likely to produce a new outcome." McGee's testimony, assuming it was admissible under 404(b), is not dispositive--Scott introduced numerous witnesses and forensic evidence supporting his story. Also McGee's testimony is not impervious to attack. Scott submitted to the district court three affidavits questioning McGee's veracity and reliability. We cannot conclude that her testimony would have altered the jury's verdict. Therefore, we find that the district court did not abuse its discretion in denying Simmons's motion for a new trial based on newly discovered evidence.
 
 VI.
 
 24
 For the foregoing reasons, we affirm the rulings of the district court.
 
 AFFIRMED
 
 
 *
 The parties agree on the nature and extent of Simmons's injuries