UNITED STATES of America, Plaintiff–Appellee,

v.

Darryl FARLEY, Defendant–Appellant.

No. 92–4113.

United States Court of Appeals, Tenth Circuit.

May 5, 1993.

---

Joseph C. Fratto, Jr., Salt Lake City, UT, for defendant-appellant.

Carlie Christensen, Asst. U.S. Atty. (David J. Jordan, U.S. Atty. and Barbara Bearnson, Asst. U.S. Atty., with her on the brief), Salt Lake City, UT, for plaintiff-appellee.

Before EBEL, GODBOLD,[†] and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendant appeals the trial court's order allowing closed circuit testimony and the admission of certain hearsay statements during his trial. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

*Background*

Defendant-appellant Darrell Farley was indicted for aggravated assault in violation of §§ 18 U.S.C. 2241(c) and 1153(a), after he engaged in forced intercourse with a five year old girl on a Navajo Reservation. The government filed a motion pursuant to 18 U.S.C. § 3509 requesting that the testimony of the victim be presented via two-way closed circuit television. After a hearing, the trial court granted the government's motion. Mr. Farley was convicted.

During trial, the district court admitted certain statements made by the child victim to her mother and her psychologist, Dr. Tyler. After the incident, the mother heard the child victim (D.C.) say to a sibling in the midst of an argument, "Darryl [sic] Farley is going to get you." V R. 1–32. D.C.'s mother became suspicious and questioned D.C. about the statement. D.C. reluctantly relayed the events that had taken place some eight hours earlier, when Mr. Farley had assaulted her in the woods near a bus stop.

D.C.'s mother took her to a medical center for treatment and, while at the center, D.C.

---

† The Honorable John C. Godbold, Senior United States Circuit Judge for the United States Court of Appeals–Eleventh Circuit, sitting by designation.

spoke with FBI Agent Kirk. Agent Kirk accompanied D.C. and her parents to the location of the incident. Later, Dr. Tyler was asked to evaluate D.C. and, in order to do so, asked her to make certain drawings, describe the encounter with Mr. Farley, and reenact the event using dolls.

*Discussion*

I. The Use of Closed Circuit Testimony

The Supreme Court has given guidance concerning the use of closed circuit testimony in *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). This technique, the Court noted, is useful in reducing the trauma experienced by the child victim but presents troubling issues regarding a defendant's right to confront the witnesses against him. *See* U.S. Const. amend. VI. The right of confrontation is not limited to physical presence of the witness, but also includes "oath, cross-examination, and observation of demeanor by the trier of fact." *Craig,* 497 U.S. at 846, 110 S.Ct. at 3163. Thus, certain exceptions to an absolute right to physically confront witnesses have been accepted. *Id.* 497 U.S. at 846–49, 110 S.Ct. at 3164–66 (citing *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) (former testimony of unavailable witness); *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (hearsay exceptions); *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (hearsay statements of nontestifying coconspirators); *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (trial judge may remove defendant from courtroom for disruptive behavior)). *See also Myatt v. Hannigan,* 910 F.2d 680, 682–83 (10th Cir.1990).

Acknowledging the interest of the state in protecting children, the Court recognized that closed circuit testimony would be necessary under some circumstances. However "[t]he requisite finding of necessity must of course be a case-specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Craig,* 497 U.S. at 855–56, 110 S.Ct. at 3169 (citations omitted).

Following the *Craig* decision, 18 U.S.C. § 3509 was promulgated, specifying the procedures to be used in federal courts to allow a child victim to testify via closed circuit. Section 3509(b)(1)(B) permits closed circuit testimony

if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:

(i) The child is unable to testify because of fear.

(ii) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

. . . . .

Mr. Farley argues that the statutorily mandated prerequisites were not established and that the necessary findings are not contained in the trial court's order.

■ At the hearing regarding the proposed use of closed circuit testimony, the government's main witness was Dr. Tyler, a psychologist who had examined D.C. Dr. Tyler testified at length about the examination and her opinion concerning D.C.'s likely reaction to testifying. When asked if there were any benefits to be gained from closed circuit testimony, Dr. Tyler testified that "outside of the court setting is less threatening and the object of the victim[']s fear is not visible to the victim." II R. 47. Dr. Tyler defined that "object of the victim[']s fear" when she was asked, "So what you're telling me then it's in his [Darrell Farley's] presence that increases the fear?" and answered, "Of course." II R. 51.

The district court allowed the use of two-way closed circuit television as an alternative to live testimony by the child victim. The court found that the government had adequately shown the necessity of the procedure based on the "emotional trauma that the child would suffer ... caused by testifying in the courtroom setting as well as by being in the defendant's presence in the court."

Had the court not determined that trauma to the child would be caused by the defendant's presence, the findings would be inadequate under *Craig*. General trauma experienced by retelling the events or because of the intimidating atmosphere of a courtroom will not justify use of closed circuit procedures. *Craig*, 497 U.S. at 855, 110 S.Ct. at 3169. Here, however, the district court found that D.C. would be unable to testify because of fear and would likely suffer trauma if she did testify, both listed as requisite findings in 18 U.S.C. § 3509(b)(1)(B)(i) and (ii). Moreover, the court noted that "the defendant's presence in court" would exacerbate the trauma and fear already likely to be experienced by the victim, thus satisfying the constitutional parameters set forth in *Craig*.

## II. Hearsay Statements

Mr. Farley also argues that the trial court erred in admitting several hearsay statements. The child victim had told her story to several adults, including her mother, a psychologist, Dr. Tyler, and an FBI investigator, Trace Kirk. The trial court allowed D.C.'s mother and Dr. Tyler to testify as to the information relayed to them by D.C.

### A. Testimony of Dr. Tyler

The hearsay statements offered during Dr. Tyler's testimony were admitted under Fed.R.Evid. 703, which allows an expert to testify as to the basis of her opinion. Dr. Tyler testified that she had relied upon D.C.'s comments during their interview as well as the drawings made by D.C. to arrive at her opinion. IV R. 2–20. Therefore, Rule 703 would allow the expert to testify regarding the information, even if the evidence would not otherwise be admissible. *Wilson v. Merrell Dow Pharmaceuticals, Inc.*, 893 F.2d 1149, 1153 (10th Cir.1990). The judge issued a proper warning to the jury explaining that the testimony was being received for the limited purpose of laying a foundation for the doctor's opinion. *See Hickok v. G.D. Searle & Co.*, 496 F.2d 444, 447 (10th Cir. 1974).

Alternatively, these statements would be admissible under Fed.R.Evid. 803(4), which allows hearsay statements that were made "for purposes of medical diagnosis and treatment." The trial court expressed concern because Dr. Tyler was not D.C.'s regular treating physician. However, "Rule 803(4) 'abolished the [common-law] distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only: the latter usually refers to a doctor who is consulted only in order to testify as a witness.'" *Morgan v. Foretich*, 846 F.2d 941, 950 (4th Cir. 1988) (quoting *United States v. Iron Shell*, 633 F.2d 77, 83 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)).

### B. Testimony of the Victim's Mother

Mr. Farley also contends that the testimony of the victim's mother contained inadmissible hearsay, improperly allowed by the trial court under Fed.R.Evid. 803(24), the residual exception to the hearsay rule. We note that not all of the testimony discussed by Defendant constitutes hearsay. Fed. R.Evid. 801(c). For example, D.C.'s mother overheard D.C. tell a sibling during a dispute, "'Darryl [sic] Farley is going to get you. He's a bad man.'" V R. 1–32. This evidence was clearly not offered for the truth of the matter asserted. That is, the prosecution was not attempting to prove that Mr. Farley was going to "get" D.C.'s sibling; rather, this testimony was offered to explain the mother's suspicion and decision to question D.C. *See United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir.1990) (statement made in the midst of argument was not offered for truth of matter asserted); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir.1985) (statement which provided impetus for investigation was not offered for truth of matter asserted), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986).

However, a great deal of the mother's testimony consisted of D.C.'s account of the incident. The trial court found sufficient circumstantial guarantees of trustworthiness to allow the testimony under Fed.R.Evid. 803(24), but limited it to statements made by D.C. the night of the assault and the following day.

The hearsay exception announced in Fed.R.Evid. 803(24) is to be used in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice. *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir.1991). Here, we note that some statements were made the night of the assault and others were made the next morning. D.C. walked home after the incident and found her mother and grandmother preparing to leave. V R. 1–26. They drove her to school and she did not see her mother again until 6:00 that evening. *Id.* 1–29. Within two hours of this opportunity to speak with her mother, D.C. told her mother that she had encountered Mr. Farley in the woods. *Id.* 1–33. As her mother tried to speak with her, D.C. "kept running off," "didn't want to talk" and was "scared." *Id.* Her mother discontinued questioning when D.C. "was almost about to cry." *Id.* 1–34. That night D.C. had a nightmare, wet her bed and cried. *Id.* The next day, after the other children had left for school with their father, D.C.'s mother questioned her again and learned the nature of the assault.

D.C. made the statements to her mother while she was " 'still suffering pain and distress from the assault.' " *Morgan*, 846 F.2d at 948 (quoting *United States v. Nick*, 604 F.2d 1199, 1204 (9th Cir.1979)). D.C. employed " 'childish terminology.' " *Id.* For example, she told her mother that " 'he just poked me with a stick.' " V R. 1–36. Furthermore, D.C.'s youth "greatly reduce[s] the likelihood that reflection and fabrication were involved." *Morgan*, 846 F.2d at 948. The statements were probative, as they were the account of the victim herself, and material. We do not find that the trial court abused its discretion by admitting the evidence pursuant to Fed.R.Evid. 803(24).

For many of the same reasons, we also believe that the statements would have been admissible as excited utterances. Fed. R.Evid. 803(2). While there is some lapse of time, we noted above that the statements were made relatively quickly after the child had an opportunity to speak with her mother alone. *See Morgan*, 846 F.2d at 947. The description of D.C. given by her mother— frightened, on the verge of tears and trying to run away—indicates that she was still under the stress of the event. D.C. told her mother that Mr. Farley had warned her not to tell about the assault. V R. 1–36. Finally, "considering the surprise of the assault, its shocking nature and the age of the declarant," the stress of the attack could have continued through that day and until the following morning. *Iron Shell*, 633 F.2d at 86.

AFFIRMED.