**MINERSVILLE SAFE DEPOSIT BANK & TRUST CO., et al.**

v.

**BIC CORPORATION.**

**Tina Brown KLEMKA,**

v.

**BIC CORPORATION.**

Civ. A. Nos. 95–4548, 95–5538.

United States District Court, E.D. Pennsylvania.

Dec. 23, 1997.

---

Michelle Tiger Heyman, Richard A. Kraemer, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for BIC Corp.

Eugene A. Luciw, Hecker, Brown, Sherry and Johnson, Philadelphia, PA, for Associated Wholesalers, Inc.

Rebecca L. Warren, Harding and Warren, Bloomsburg, PA, for Millville Mutual Ins. Co.

Robert McLaughlin, Ashland, PA, James J. Riley, Danielle L. Peyakovich, Suhir R. Patel, Riley and Fanelli, Pottsville, PA, John O'Boyle, Clipper and O'Boyle, Hershey, PA, for Tina Brown Klemka.

*MEMORANDUM*

BARTLE, District Judge.

These actions arise out of the tragic deaths of two young children in a house fire which occurred in Shamokin, Northumberland County, Pennsylvania. Plaintiffs [1] claim that Jared Klemka, the brother of the decedents, started the fire with a cigarette lighter manufactured by defendant BIC Corporation ("BIC"). The complaints originally contained strict liability claims in addition to the negligence claims before us now. Judge Marjorie O. Rendell, to whom these cases were originally assigned, dismissed the strict liability claims as well as one of the original defendants, Dillon Companies. BIC, the only remaining defendant, has moved for summary judgment on the negligence claims.

We follow the familiar summary judgment standard provided by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is granted only if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. Rule Civ. P. Rule 56(c); *see also Kornegay v. Cottingham*, 120 F.3d 392 (3d Cir.1997). In addition, we make all reasonable inferences in favor of the non-moving party. *Kornegay*, 120 F.3d at 395.

It is undisputed that the fire in issue took place at the home of Tina Brown Klemka in the early morning hours of September 7, 1993. The following people were in the house at the time: Ms. Klemka; her boyfriend Greg Garverick; and her four children, Ashley (age 6), Donovan (age 4), Jared (age 3), and Cheyenne (age 1). According to Ms. Klemka, she put her children to bed in the upstairs bedrooms around 9:30 p.m. on September 6, 1993. Ms. Klemka and Mr. Garverick slept downstairs on the sofa. Some time after 3:00 a.m. Jared's crying woke Ms. Klemka. She noticed that the chair in the corner of the living room was on fire. Although Ms. Klemka and Mr. Garverick were able to rescue Jared and Cheyenne, Ashley and Donovan were not so fortunate. They perished in the flames.

After Ms. Klemka had removed Jared from the burning house, he returned, and she had to carry him out a second time. She did not see him with a lighter on either occasion. Only some 45 minutes after the fire started did she observe Jared holding a BIC lighter when he was outside the home. The lighter in question has been lost.

Plaintiffs' experts, Woodrow Shaner, a Pennsylvania State Police Fire Marshal,[2] and Lyle Keeler, an independent fire investigator privately retained by Millville Mutual Insurance Company, undertook to determine the cause of the fire. Both Shaner and Keeler believe it began when an open flame, such as a match, lighter, or candle, ignited the living room chair. After eliminating all other causes, Shaner and Keeler concluded it was three year old Jared Klemka who had set the fire.[3]

At his deposition, Shaner stated that he brought the boy back to the burned house on September 9, 1993, two days after the fire, and had the following exchange with him:

[M]y question was, I believe, how did you set the fire or did you set the fire, and he lit the lighter that I had handed him and went towards the chair ... and goes poof and I said did you set the fire, did you set the chair on fire with the lighter and I recall he nodded. I don't recall whether he said yes. I recall him nodding. Then he turned around directly and there was a piece of charred, I believe it was a chair or a stair rail. He was there—kept this lighter lit was trying to ignite that ....

(Shaner 11/19/96 Dep. at 105–106). Lyle Keeler was also present and observed Jared's behavior. Both Shaner and Keeler concede that they would be unable to deter-

---

1. Minersville Safe Deposit Bank & Trust Co. replaced Tina Brown Klemka as the administrator of the estates of Ashley Werkheiser and Donovan Klemka in Civil Action No. 95–4548.

2. Woodrow Shaner is now retired, but he was working as a State Police Fire Marshal in September, 1993.

3. It is essential to plaintiff's case that Jared is the child who started the fire because the two older children are above the age established by Consumer Products Safety Commission for children who should not be able to light child-resistant lighters.

mine the cause of the fire without relying on this interaction with Jared.

On May 30, 1996, Judge Rendell held a hearing on plaintiffs' motion for a protective order regarding Jared's deposition. During that hearing, both plaintiffs and defendant acknowledged that Jared was incompetent to testify because of his age. All parties have agreed that Judge Rendell ruled Jared incompetent to testify, and they do not contest that ruling here.[4]

Defendant contends that plaintiffs' experts cannot rely on Jared's statements on September 9, 1993 because they are unreliable.[5] At that time Jared was only 3 years and 3 months old. If defendant is correct, plaintiffs cannot make out a case to go to the jury, and defendant is entitled to summary judgment.

■ Generally, everyone is presumed to be a competent witness, including young children. *See* Fed.R.Evid. 601; *United States v. Rouse*, 111 F.3d 561, n. 3 (8th Cir.1997). When determining competency of a child, the court considers the "capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former." *Wheeler v. United States*, 159 U.S. 523–24, 16 S.Ct. 93, 40 L.Ed. 244 (1895). We need not make this analysis here because all parties have conceded his incompetence. Thus, plaintiffs agree that Jared is unable to differentiate truth from falsehood or to appreciate the consequences of being untruthful to the court.

■ We recognize nonetheless that Jared's incompetency does not automatically preclude the admissibility of his statements. For example, in sexual abuse cases courts often admit very young children's *res gestae* statements because the hearsay exception for excited utterances reflects their trustworthiness. *See* Fed.R.Evid. 803(2); *See also, Rouse*, 111 F.3d at 569–70; *United States v. Farley*, 992 F.2d 1122, 1126 (10th Cir.1993); *Morgan v. Foretich*, 846 F.2d 941, 946 (4th

Cir.1988). The same holds true for statements made by young children for the purposes of medical treatment. Those statements are admissible under Federal Rule of Evidence 803(4). *See, e.g., Farley*, 992 F.2d at 1125; *Morgan*, 846 F.2d at 949. In contrast, there is no rule allowing the introduction into evidence of hearsay statements made to fire investigators several days after the incident in question. Jared's out of court actions and words are not deemed reliable within any established hearsay exception under Rule 803 or Rule 804 of the Federal Rules of Evidence.

■ Regardless of any established hearsay exception under these two rules, plaintiffs maintain that Jared's September 9, 1993 statements are reliable evidence on which the experts may predicate their opinions of the cause and origin of the fire. Rule 703 of the Federal Rules of Evidence provides that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed. R.Evid. 703. This rule allows experts to rely upon hearsay if trustworthy, that is, if it is "of the kind normally employed by experts in the field." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3d Cir.1994)(quoting *In re "Agent Orange" Prod. Liability Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y.1985), *aff'd* 818 F.2d 187 (2d Cir.1987)).

■ Rule 702 provides for the admissibility of a scientific or technical expert opinion if it will "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed.R.Evid. 702. In deciding whether the expert's opinion has scientific validity, the court must focus " 'solely on principles and methodology, not on the conclusions they generate.' " *Paoli*, 35 F.3d at 744 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 2797, 125 L.Ed.2d 469 (1993)). Thus, Rules 702 and 703 address slightly different aspects of expert testimony. "While Rule 702 focuses

4. The hearing transcript and the June 24, 1996 Order granting the protective order regarding Jared's deposition, however, do not contain a formal finding that Jared is incompetent to testify.

5. Under the hearsay rules, "A statement is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801.

on an expert's methodology, Rule 703 focuses on the data underlying the expert's opinion." *Paoli*, 35 F.3d at 747.

In *Daubert*, the Supreme Court emphasized that "the Rules of Evidence ... assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597, 113 S.Ct. at 2799. Moreover, "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *General Electric Co. v. Joiner*, — U.S. ——, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

The Court of Appeals for the Third Circuit has detailed how we should decide whether the evidence is "of a type reasonably relied on by experts" as mandated by Rule 703. *See Paoli* 35 F.3d at 747. The *Paoli* court emphasized that judges "play a gatekeeping role with regard to experts," and must conduct "an independent evaluation into reasonableness" under Federal Rule of Evidence 104(a).[6] 35 F.3d at 748. A judge may consider any factors "he or she deems relevant" to determine if there are "good grounds to rely on this data to draw the conclusion reached by the expert." *Id.* at 748–49.[7]

No mechanical formula exists to determine if Shaner's interviewing technique elicited reliable responses. The Supreme Court adopted a "totality of the circumstances" test when deciding whether hearsay statements by a child in a sexual abuse case had the "particularized guarantees of trustworthiness" mandated by the Confrontation Clause. *Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990). We may consider, among other factors, the spontaneity and consistency of the child's answers, the child's mental state, whether the child is using adult language, and if the child has a motive to fabricate a story. *Id.* at 821–22, 110 S.Ct. at 3149–50. Several cases

emphasize the importance of not asking leading questions to children. *See, e.g., United States v. Tome*, 61 F.3d 1446, 1453 (10th Cir.1995); *Doe v. United States*, 976 F.2d 1071, 1081 (7th Cir.1992).

Serious doubts arise concerning the trustworthiness of Jared's statements because of Shaner's suggestive interviewing technique. Jared's father, Howard Brown, was also present at this interview of his son. At his deposition, the father testified that the boy "blocked us out" on the way to the burned house and Brown could "just tell that Jared didn't really want to answer that question" when Shaner asked him about lighting the chair on fire. Shaner, who has no background in child psychology, did not allow the boy to speak spontaneously. The Fire Marshall told Jared that it was not his fault if he started the fire, asked how he set the fire, and if he ignited the chair with a lighter. In response, Jared operated the lighter, said "poof," and held the flame towards the chair and a piece of charred wood. Based on this response, Shaner and Keeler concluded that Jared started the fire. Charles King, defendant's expert on the cause and origin of the fire, has a different view. In his opinion, Jared's actions during the interview are not reliable indicators of who started the fire.

Significantly, defendant's child psychology expert stated that Shaner's interviewing technique was "coercive for a young child, as these kinds of statements [saying that it wasn't Jared's fault] give the clear message that the adult wants the child to concur, rather than allowing the child to disagree." She concludes that Jared's "response is not a reliable indication of the event that occurred. It therefore would not be reasonably relied upon by me, or other experts in the field of child psychology." We find this uncontested opinion to be compelling, together with the surrounding circumstances we have enumerated. *See Paoli*, 35 F.3d at 746. Accordingly, we conclude that the methodology of plaintiffs' experts was seriously flawed. Moreover, the words and actions of this three

---

**6.** Fed. Rule of Evid. 104(a) states: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privilege."

**7.** Since the evidence in question is clearly relevant we will focus on the reliability issue.

year old some two days after the incident are not the type of data reasonably relied upon by fire investigators. Plaintiffs' experts simply do not have "good grounds" to opine that Jared had set the fire.

Jared's September 9, 1993 statements are inadmissible through plaintiffs' experts or under any other hearsay exception. As a result, plaintiffs cannot meet their burden to provide sufficient evidence for a jury reasonably to find that any negligence on the part of defendant proximately caused the fatalities in question. We will grant the motion of defendant BIC Corporation for summary judgment on the remaining negligence claims.

## ORDER

AND NOW, this 23rd day of December, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant BIC Corporation for summary judgment is GRANTED; and

(2) judgment is entered in favor of defendant BIC Corporation and against plaintiffs Tina Brown Klemka and Minersville Safe Deposit Bank & Trust Company as administrators of the estates of Ashley Werkheiser and Donovan Klemka.