FILED
United States Court of Appeals
Tenth Circuit

April 23, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENDALL LEN BURGESS,

    Defendant - Appellant.

No. 22-7033

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:20-CR-00132-RAW-1)**

_____

Shira Kieval, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant Kendall Burgess.

James R.W. Braun, Special Assistant U.S. Attorney (Christopher J. Wilson, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee United States of America.

_____

Before **CARSON**, **BALDOCK**, and **EBEL**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

In this direct criminal appeal, Defendant Kendall Burgess challenges his

convictions for 1) aggravated sexual abuse and 2) abusive sexual contact. These

crimes involved a seven-year-old victim, P.G.  The primary question presented is whether the district court abused its discretion in admitting into evidence at trial a fifty-minute videorecording of a trained examiner's "forensic interview" with P.G. that took place three days after the last incident of alleged sexual abuse.  The trial court admitted that recorded interview into evidence under Fed. R. Evid. 807, the residual exception to the rule against hearsay, after the victim, then age nine, testified inconsistently at trial as to the acts Burgess committed when he sexually abused her on the day in question.  We conclude the district court did not abuse its discretion in admitting the recorded interview after determining 1) that P.G.'s statements made during the recorded interview were "supported by sufficient guarantees of trustworthiness," and 2) that the video recording was "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a).  We further reject the remainder of Burgess's appellate arguments.  Having jurisdiction under 28 U.S.C. § 1291, we, therefore, AFFIRM his convictions.

## I. FACTUAL BACKGROUND

In April 2019, seven-year-old P.G. lived in a three-bedroom house with her family.  P.G. slept in one bedroom with her mother and her twelve- and six-year-old sisters.  P.G.'s twenty-one-year-old sister stayed in another bedroom with her nineteen-year-old boyfriend, Defendant Burgess, and their two young children (ages two years and three months).  P.G.'s seventeen-year-old brother stayed in the third bedroom.

2

On Good Friday, April 19, Burgess's two-year-old child was severely burned when the child pulled a cup of boiling water onto himself. The child's mother and grandmother (P.G.'s sister and mother) took the child to the emergency room, leaving Burgess, who had been sleeping, home with the other children. P.G. says that Burgess sexually abused her that afternoon. P.G. then spent the weekend with the family of one of her friends. That Sunday, during an Easter party, the friend's mother overheard P.G. tell another child that P.G.'s brother-in-law had put his private in P.G.'s mouth and peed. The friend's mother reported what she had overheard to P.G.'s mother, who then confronted her older daughter and Burgess. They immediately moved out of the home. When P.G. returned home the next day (Monday), P.G.'s mother spoke with P.G., asking first who she referred to as her brother-in-law. P.G. answered Burgess. After P.G.'s mother assured P.G. that Burgess was not at home, P.G. told her mother that Burgess had sexually abused her on the preceding Friday, telling a story consistent with what the other mother had overheard P.G. telling her playmate.[1]

After hearing from P.G. that Burgess had sexually molested her, P.G.'s mother took P.G. to the police station and then to Safe Harbor Victim Center, where the Center's director, Jawanna Wheeler, conducted a recorded forensic interview with P.G. Wheeler had been trained to conduct forensic interviews, which Wheeler

---

[1] At trial, the district court did not allow either P.G.'s mother or the friend's mother to testify as to what P.G. had said about the abuse.

explained are "neutral fact-finding conversation[s]" using "open-ended, non-leading" questions. (III R. 213.) During the fifty-minute interview, P.G. told Wheeler that the preceding Friday, when her mother was out of the house, Burgess put his "private" into P.G.'s mouth and "peed." (I Supp. R., Ex. 5 (video) at 19:20–21:17.) He also touched P.G.'s "private" on top of her clothes with his hand. (Id. at 24:53-25:27.) According to P.G., this happened while Burgess and P.G. were in the bathroom. P.G. further told Wheeler that Burgess had put his penis into P.G.'s mouth and touched her "private" on more than five other occasions.

## II. PROCEDURAL BACKGROUND

The United States charged Burgess with committing the sex acts P.G. had described. Specifically, a grand jury indicted Burgess on two federal offenses:

1) Count One, aggravated sexual abuse in Indian country, charged that, "[o]n dates uncertain . . . from in and about November 2018 to on or about April 19, 2019, within . . . Indian Country," Burgess, "an Indian, did knowingly engage and attempt to engage in a sexual act as defined in" 18 U.S.C. § 2246—"to wit: contact between the penis and the mouth of P.G., a person who had not attained the age of 12 years, in violation of Title 18, United States Code, Sections 1151, 1153, 2241(c) and 2246(2)(B)."

2) Count Two, abusive sexual contact in Indian Country, charged that, "[o]n dates uncertain . . . from in or about November 2018 to on or about April 19, 2019, within . . . Indian Country," Burgess,

> an Indian, did knowingly engage in and cause sexual contact as defined in Title 18, United States Code, Section 2246, to wit: the intentional touching, through the clothing, of the genitalia of P.G., a person who had not attained the age of 12 years, with an intent to abuse, humiliate, harass, degrade, arouse and gratify the sexual desire of any person, in violation of Title 18, United States Code, Sections 1151, 1153, 2244(a)(5) and 2246(3).

4

(I R. 13–14.)[2]

Prior to trial, in response to the parties' motions in limine, the district court ruled that neither P.G.'s mother nor P.G.'s friend's mother could testify to anything P.G. said about the abuse. Instead, these witnesses could only testify generally that P.G. made statements that prompted them to investigate further. The court otherwise deferred until trial ruling on the admissibility of statements P.G. made to others, including Wheeler, the forensic interviewer.

At trial, P.G., then age nine, testified that, when she was six or seven years old, the following occurred on April 19, 2019, which P.G. recalled was the Friday when her two-year-old nephew got burned: When P.G. exited her older brother's bedroom, where some of the other kids were playing a video game, Burgess grabbed her by the arm, took her into the bathroom, shut the door, told her to pull her pants down, then Burgess "put his private in my butt" (III R. 154). "[T]hen he hurried up and put on his clothes and then he told me to hurry up and put on mine and then he got out of the bathroom, so I got out of the bathroom and went back into [her older brother] T.F.'s room to play on his game." (Id. at 155.) That was the first time P.G. had ever stated that Burgess had anally penetrated her.

P.G. further testified that Burgess's "private" did not touch any other part of her body. (Id.) However, P.G.'s direct examination continued:

---

[2] The grand jury also indicted Burgess on a misdemeanor assault charge stemming from events surrounding his arrest. The jury acquitted Burgess of that offense, and it is not at issue in this appeal.

Q  P.G., do you remember any other part of his body touching you, like his hands or his mouth or your mouth or anything like that?

A  My mouth.

Q  Your mouth, okay.  Tell us what happened with your mouth.

A  I closed my mouth—well, I closed my eyes, opened my mouth, and [Burgess] put his bad spot in my mouth.

Q  What do you mean by bad spot?

A  The one that is covered up with a bathing suit.

. . . .

Q  And what happened after he put it in your mouth?

A  Hmmmm . . . I don't know.

Q  Do you remember was—did he stay still when it was in your mouth or something other than that?

A  Sometimes he would stay still and sometimes he won't.

Q  Okay. Well, the time in the bathroom, do you remember whether he stayed still or just was moving around?

A  He sometimes would move or stay still.

Q  Okay.  And did anything happen with his private with your mouth?

A  Yes.

Q  Okay.  What?

A  He made me suck it.

Q  Okay.  And was there—do you remember any sort of taste or sensation?

A  Pee.

6

Q  What do you mean pee?

A  I would think it was water so I would swallow it and then one time it had a weird taste so I spitted [sic] it out and then it got on [her older brother] T.F.'s carpet and — so I didn't tell T.F. about that.  And then I don't know what happened next.

. . . .

Q  So did the pee happen every time he put his private in your mouth?

A  Yes.

. . . .

Q  So P.G., do you remember how many times that happened?

A  A lot.

Q  And where would it happen at?

A  Sometimes in the laundry room, sometimes in [her older brother] T.F.'s room, and that would be it.

Q  And then this time it was in the bathroom?

A  Yes.

. . . .

Q  P.G. did [Burgess] ever say anything to you about what was going on?

A  No, he just told me not to tell anybody.

. . . .

Q  Okay.  P.G., do you remember him—you've told us about his private touching your mouth and that his private touched your butt.  Do you remember if he touched other parts of your body with any part of his body, even his hands or anything like that?

A  No.

Q  Okay.  Do you remember if he ever touched your privates?

A  Sometimes.

Q  What would he touch your privates with?

A  His hands.

Q  And would that be on top of or underneath your clothing?

A  Sometimes on top, sometimes not.

(Id. at 155–59.)

On cross-examination, P.G. testified that on the day her two-year-old nephew was taken to the hospital, Burgess took her into the bathroom, "put his bad spot in my butt" (id. at 171–72), then "[h]e hurried up and put on his shorts and then tells me to put on my shorts" (id. at 172).  P.G. stated that she had only ever told her friend about this happening.  She further testified:

Q  Was that all that happened that day?

A  Yes.

Q  Did he touch you in any other way that day?

A  No.

Q  Did he, as you say, pee in your mouth that day?

A  No.

(Id. at 173.)  On redirect, P.G. reiterated that Burgess did not put his private in her mouth that day; "[t]hat was on a different day."[3]  (Id. at 175.)

_____

[3] Burgess characterizes P.G.'s testimony as "competent[], complete[], and without recanting."  (E.g., Aplt. Br. 24.)  It is accurate that P.G. never recanted her statements

8

After P.G.'s testimony, the Government moved to introduce, as substantive evidence of Burgess's guilt, the video of the forensic interview that occurred several days after the alleged Good Friday abuse. The trial court granted the Government's request, over defense counsel's objection, admitting the video under Fed. R. Evid. 807, the residual exception to the rule against hearsay. The Government admitted the video during the testimony of the forensic interviewer who conducted the interview with P.G.[4]

The Government also presented testimony from an expert in forensic interviews with children who are suspected of being sexually abused. This expert, who had not interviewed P.G., testified that it is not uncommon for child sex abuse victims to disclose more details of the abuse as time goes on. She further testified that "[i]t is unrealistic to expect . . . a child to be able to give you exactly dates and times that something has happened, be able to tell you every single detail that happened to them, especially when it is one of the first times that they are talking about it." (Id. at 239.)

---

that Burgess sexually abused her. But the trial transcript indicates that she testified confusingly and inconsistently as to what sex acts Burgess committed against her during the Good Friday abuse.

[4] Rule 807(b) requires that the party seeking to admit evidence under the residual hearsay rule give the other party reasonable notice of the intent to offer the evidence. Here, the Government provided Burgess this notice through its pretrial pleadings. Burgess does not challenge the adequacy of that notice.

Burgess testified in his defense that he did not have any sexual contact with P.G. He did not know why she made up this lie.

At the conclusion of the evidence, the trial court instructed jurors that, in order to convict Burgess, they had to find beyond a reasonable doubt the specific sexual contact between Burgess and P.G. alleged in the indictment. Over defense counsel's objection, the court allowed jurors to have the video, along with the other exhibits, during their deliberations. The jury convicted Burgess of both charged offenses. At sentencing, the district court varied downward from the advisory sentence of life in prison, sentencing Burgess instead to thirty years in prison on each count, to run concurrently. Burgess challenges both convictions on appeal.

### III. DISCUSSION

Burgess raises several grounds for reversing his convictions, but his primary challenge is to the admission of the recorded interview. We reject that challenge, as well as Burgess's other asserted grounds for reversal.

**A. The district court did not abuse its discretion in admitting the recorded interview into evidence under Fed. R. Evid. 807**

Rule 807(a), as amended in 2019, provides:

Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

10

**(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

"The residual exception 'should be used only "in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice."'" United States v. Dalton, 918 F.3d 1117, 1133 (10th Cir. 2019) (quoting United States v. Tome, 61 F.3d 1446, 1452 (10th Cir. 1995) (applying Fed. R. Evid. 803(24), a predecessor to Rule 807(a))). "Courts have employed the [residual hearsay] exception most extensively in admitting statements made by child witnesses, particularly in sexual abuse cases." 2 McCormick On Evid. § 324 (8th ed. updated July 2022); see also United States v. Harrison, 296 F.3d 994, 1004 (10th Cir. 2002).

We review the district court's Rule 807 ruling for abuse of discretion. United States v. Hammers, 942 F.3d 1001, 1009–10 (10th Cir. 2019). A district court abuses its discretion if its ruling was either based on an error of law or a clearly erroneous finding of fact, or "manifests a clear error in judgment." United States v. Dowlin, 408 F.3d 647, 659 (10th Cir. 2005) (quoting United States v. Jenkins, 313 F.3d 549, 559 (10th Cir. 2002)). "Under this standard, we will not disturb a trial court's [evidentiary] decision unless we have a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Walker, 85 F.4th 973, 979 (10th Cir. 2023) (quoting United States v. Merritt, 961 F.3d 1105, 1111 (10th Cir. 2020)).

11

Here, Burgess challenges the district court's ruling as to both residual exception requirements—trustworthiness and probative value.

### 1. Sufficient guarantees of trustworthiness

Rule 807 first requires that P.G.'s hearsay statements—her recorded responses to the forensic interviewer's questions—are "supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which [they were] made and evidence, if any, corroborating the statement[s]," Rule 807(a)(1).[5] The rule speaks in terms of guarantees; "[a] suggestion of trustworthiness cannot suffice." Harrison, 296 F.3d at 1006. To be admissible under the residual hearsay exception, a court must find that the declarant "'was particularly likely to be telling the truth when the statement was made.'. . . It is not enough merely to find an absence of evidence that the statement was unreliable." Tome, 61 F.3d at 1453 (quoting Idaho v. Wright, 497 U.S. 805, 822 (1990)).

Here, the district court concluded that P.G.'s statements during the recorded interview were trustworthy for the following reasons:

> I believe the indicia of the trustworthiness test has been met. [The interview] was closer in time to the alleged events. It was not in a room full of adults, and frankly it was an exceptionally -- I've watched the video of the interview.

---

[5] In applying an earlier version of the residual hearsay exception, this court previously held that corroborating evidence did not bear on the trustworthiness of a hearsay statement under the residual exception. See Tome, 61 F.3d at 1452 (discussing former Rule 803(24), which has been recodified at Rule 807). But the 2019 amendments to Rule 807 "specifically require[] the court to consider corroborating evidence in the trustworthiness enquiry," Fed. R. Evid. 807, adv. comm. n. to 2019 amendments, thus overruling this court's prior rule.

> It was exceptionally done with no leading questions, open-ended questions, nothing suggestive in the slightest.

(III R. 188.)

We have previously identified these factors as relevant when considering the trustworthiness of hearsay statements. See Tome, 61 F.3d at 1453 (considering whether interview occurred close in time to the alleged abuse and fact that a trained interviewer used open-ended questions during the interview); United States v. Farley, 992 F.2d 1122, 1126 (10th Cir. 1993) (considering, in applying predecessor Rule 803(24), how close in time hearsay statements were made to alleged abuse). As the district court recognized, these factors are relevant here. Wheeler interviewed P.G. just three days after the last alleged abuse occurred. Pursuant to her training as a forensic interviewer, Wheeler used only open-ended, non-leading questions during the interview.

There were other guarantees of trustworthiness, as well. P.G.'s statements made during the recorded interview were consistent with her spontaneous statements that P.G.'s friend's mother overheard during the Easter party and what P.G. told her mother about the abuse. See Harrison, 296 F.3d at 1004 (noting consistency of victim's out-of-court statements "is a strong indicator of the trustworthiness of her" challenged hearsay statement); cf. Tome, 61 F.3d at 1453 (considering whether hearsay statements were spontaneous). Furthermore, using child-like terms to explain what happened, during the interview P.G. described the incident of abuse in fairly specific detail. See Tome, 61 F.3d at 1453 (considering specificity in deciding

13

whether hearsay statement had sufficient guarantees of trustworthiness); <u>Farley</u>, 992 F.2d at 1126 (same).  Additionally, there is no indication here that P.G. had any motive to lie about Burgess sexually abusing her.  <u>See</u> <u>Harrison</u>, 296 F.3d at 995, 1006 (considering whether victim had motive to lie); <u>Tome</u>, 61 F.3d at 1453 (same). Moreover, P.G.'s "youth"—she was seven at the time of the interview—"'greatly reduce[s] the likelihood that reflection and fabrication were involved.'" <u>Farley</u>, 992 F.2d at 1126 (quoting <u>Morgan v. Foretich,</u> 846 F.2d 941, 948 (4th Cir. 1988), and addressing statements made by five-year-old victim).  Under these circumstances, the district court did not abuse its discretion in concluding there were sufficient guarantees of trustworthiness as to P.G.'s statements made during the interview.

Burgess's arguments to the contrary are not convincing.  Whereas Rule 807(a)(1) directs a court to consider "the totality of the circumstances <u>under which</u> <u>[P.G.'s recorded statements were] made</u>," Burgess's arguments focus instead on evidence that he claims supports his innocence.  To that point, he argues that P.G.'s interview responses were not trustworthy because he did not sexually abuse P.G.  In support of his innocence, Burgess contends that there was no physical evidence of the alleged abuse to corroborate P.G.'s statements.  But Rule 807(a)(1) does not require there be evidence to corroborate the hearsay statements.  The rule only requires a court to consider corroborating evidence "if any."  Here, it is unlikely there would have been physical evidence of the type of abuse P.G. relayed to Jawanna Wheeler during the interview—oral sex and Burgess touching P.G.'s genitalia through her clothes.  Burgess instead appears to be suggesting that there should have been

14

physical evidence of anal penetration.  But that was not part of P.G.'s hearsay statements made during the recorded interview.  That was her testimony at trial.

In further support of his assertion that he never sexually abused P.G., Burgess points out that the other children in the home that afternoon did not notice Burgess alone with P.G. or sexually abusing her, and P.G.'s older brother T.F. stated that the abuse could not have occurred that afternoon because P.G. was with him all day.[6] This information does not directly address the circumstances under which the interview was conducted.  Nor does it directly support Burgess's claim of innocence.

Finally, Burgess asserts that the inconsistencies between P.G.'s trial testimony and her out-of-court responses to the interviewer's questions establish that the interview answers were not trustworthy.  But in Harrison, the child victim contradicted her out-of-court statements by recanting them prior to trial and yet we upheld the district court's determination that there were sufficient guarantees of trustworthiness to admit hearsay evidence of those out-of-court statements.  See 296 F.3d at 995, 999, 1003–07.

We conclude, then, that the district court did not abuse its discretion in finding that P.G.'s responses during the recorded interview had sufficient guarantees of trustworthiness.  Admittedly,

---

[6] Burgess did not present this evidence at trial.  Instead, he asserted these facts to the district court in a pleading opposing a Government motion in limine, without citing to any evidence supporting these facts.  Nor does he cite to any evidence to support these asserted facts in the record before this court.

[d]etermining whether a statement has "circumstantial guarantees of trustworthiness" is not an easy task. There is no hard science of credibility. . . . But in the absence of scientific results, the chief guide must be human experience. As courts grapple with the issue, the collective experience of judges who participate in the decisions—together with the experience of the commentators who critique them—gradually emerges. In the interim, however, the wisest course is to defer to the sound discretion of the trial judge, who has unequaled experience in witnessing battles over credibility.

Id. at 1006.

### 2. The recorded interview was more probative than other evidence that the Government could have obtained through reasonable efforts

Rule 807's second requirement is that the hearsay statements—here, P.G.'s responses during the recorded interview—be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."[7]  Rule 807(a)(2).  This presents a more difficult question because P.G. testified at trial and the Federal Rules of Evidence have a "strong preference for in-person testimony," Harrison, 296 F.3d at 1007.  Even so, "[i]n many situations, the out-of-court statement will be superior" to in-court testimony "because of factors such as the spontaneity of that statement or the trauma of making the in-court

---

[7] On appeal, Burgess complains that the district court never clarified on what point the recorded interview was more probative than other evidence the Government might reasonably obtain.  But it is clear that the relevant point was what specific sex acts Burgess committed when P.G. said he sexually abused her on Friday, April 19, 2019.  That was the particular point on which P.G.'s trial testimony was inconsistent and unclear.

16

statement, . . . or the incompleteness of the in-court statement." 2 McCormick's on Evidence § 324, n. 39.

Burgess contends that, instead of using the recorded interview, the Government should have asked P.G. on redirect about her inconsistent answers as to the sexual acts Burgess committed on the day in question. In fact, the Government did ask P.G. briefly on redirect about the specific acts of abuse that occurred on that Friday. She responded that on the day Burgess anally penetrated her, he did not put his "private" in her mouth; "[t]hat was on a different day." (III R. 175.) That was inconsistent with some of her direct testimony.

Even when a child witness is available and has testified, however, courts have admitted hearsay evidence of the child's prior out-of-court statements about sexual abuse, deeming those out-of-court statements to be more probative than the child's in-court testimony. This court, for example, concluded in Harrison that a child's prior out-of-court statements to investigators were admissible at trial when the fourteen-year-old child recanted her accusations against the defendant before and during trial and the hearsay evidence was the only evidence of certain details of the alleged abuse. 296 F.3d at 995-96, 999–1000, 1003–07.

In United States v. W.B., the Eighth Circuit upheld the trial court's decision to permit a forensic interviewer to testify at trial as to an eight-year-old child's responses during an interview after the child's testimony about sexual abuse at trial "was inconsistent and unclear." 452 F.3d 1002, 1004 (8th Cir. 2006); see also id. at 1003–06.

17

Similarly, the Eighth Circuit, under plain-error review, upheld admission of the testimony of several adults, including a forensic interviewer, about out-of-court statements a three-year-old child made to them about the defendant sexually abusing the child. See United States v. Peneaux, 432 F.3d 882, 887, 891–93 (8th Cir. 2005). In that case, the child victim, at trial, denied that the defendant had sexually abused her, but also acknowledged that she had previously told people that he had sexually abused her. Id. at 888. Inconsistently, the child indicated in court that the defendant's genitalia had touched her genitalia and anus. Id. The Eighth Circuit deemed the child's testimony "inconsistent and at times unclear." Id. at 893. The Eighth Circuit concluded that,

> while Congress intended the residual hearsay exception to "be used very rarely, and only in exceptional circumstances," S.Rep. No. 1277, 93d Cong., 2d Sess., at 20 (1974), exceptional circumstances generally exist when a child sexual abuse victim relates the details of the abusive events to an adult. . . . Here, the trial testimony of [the child] T.P. was inconsistent and at times unclear. The testimony of [the adults regarding what the child told them about the sexual abuse] aided the jury in its fact finding task to determine whether T.P.'s allegations were true. The admission of this hearsay testimony was thus in the interest of justice and consistent with the requirements of Rule 807.

Id. The Eighth Circuit, therefore, held that the district court had not erred, let alone plainly erred, in admitting the adults' hearsay testimony under Rule 807. Id. at 892–93.

The Sixth Circuit, in United States v. Wandahsega, 924 F.3d 868 (6th Cir. 2019), upheld the admission of testimony from two adults about what a six-year-old child had told them about his being sexually abused. Id. at 874, 881–82. In particular, the court held that the adults' testimony was more probative on the point for which it was offered

18

than any other evidence the proponent can obtain though reasonable efforts because, "[a]t trial, the only detail that H.D.W. [the child] was able to provide about the alleged abuse was that [his father, the defendant] had touched his privates more than one time." Id. at 874, 882. Each of the two adult witnesses, on the other hand, were able to fill in the details of that abuse from what the victim had told each of them soon after the abuse had occurred. Id. at 882.

We do not derive any per se rule from these cases. They establish only that the district court has discretion to permit hearsay testimony about a testifying child's out-of-court statements about sexual abuse under Rule 807's residual exception to the rule against hearsay. In Peneaux, the Eighth Circuit noted, in reviewing the trial court's decision to admit such hearsay under Rule 807, that "'a deferential standard of review' is appropriate where the district judge 'was able to watch and listen to the witnesses as they testified.'" 432 F.3d at 893 (quoting United States v. Shaw, 824 F.2d 601, 609 (8th Cir. 1987), abrogated on other grounds by Wright, 497 U.S. 805 (1990)). The same is true in this case. Affording that deferential review to the district court's Rule 807 ruling, we cannot say that the district court abused its discretion in determining that the recorded interview was "more probative on the point for which it is offered"—what sex acts Burgess committed against P.G. on Friday, April 19—"than any other evidence that the proponent can obtain through reasonable efforts," Rule 807(a)(2). That is, we cannot say that the district court's determination was "'a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" Walker, 85 F.4th at 979 (quoting Merritt, 961 F.3d at 1111).

19

### 3. Conclusion as to the admission of the recorded interview

Although Rule 807, the residual exception to the rule against hearsay, applies only rarely, in extraordinary circumstances, we cannot conclude that the district court abused its discretion in applying Rule 807 in this case to admit into evidence the recorded forensic interview with P.G.[8]  We turn next to Burgess's other arguments challenging his convictions.  None of those arguments warrant relief, either.

## B.  The district court did not abuse its discretion by giving jurors the video of the recorded interview, along with all the other exhibits, to have during their deliberations

Having determined that the district court properly admitted the recorded interview into evidence, the district court had discretion to permit jurors to have that recording, along with the other admitted exhibits, during their deliberations.  See Marquez v. City of Albuquerque, 399 F.3d 1216, 1224 (10th Cir. 2005) ("'The transmittal of exhibits to the jury is ordinarily a matter within the discretion of the trial court and will not be reversed in the absence of clear prejudice to the defendants.'" (quoting United States v. de Hernandez, 745 F.2d 1305, 1308 (10th Cir.1984))).  We cannot

---

[8] Burgess seems to suggest, perfunctorily at several points in his briefs, that the district court abused its discretion in admitting the entire recorded interview. Burgess does not point out, however, and we could not find, anywhere in the record where he made that argument to the district court.  Furthermore, Burgess does not argue for plain-error review on appeal.  Burgess has, therefore, waived that argument. See United States v. McBride, 94 F.4th 1036, 1044 (10th Cir. 2024).  Even if we were inclined to consider that argument, however, he has not fleshed out that argument in any detail.  He has not, for example, explained what parts of the interview should, and should not, have been admitted.  We, therefore, do not consider that question.  See, e.g., Butler v. Daimler Trucks N. Am., LLC, 74 F.4th 1131, 1143 (10th Cir. 2023) (declining to address belated and perfunctory appellate argument).

say that the court abused that discretion here by allowing jurors to have the recorded interview during their deliberations.

## C. There was no prosecutorial misconduct warranting a new trial

Burgess contends that there were two instances of prosecutorial misconduct that warrant a new trial. We disagree.

### 1. Prosecutor's cross-examination

Burgess first argues that the prosecutor, while cross-examining Burgess, improperly asked him to comment on P.G.'s veracity. During direct examination by Burgess's attorney, Burgess denied P.G.'s specific accusations of sexual abuse. Direct examination concluded with the following:

Q  Do you have any idea why P.G. would say that about you?

A  I have no clue.

Q  Do you know whether it is true?

A  Yeah I know whether it is true or not.

Q  Why is that?

A  Because I didn't do it.

Q  What didn't you do?

A  Touch P.G.

(III R. 439–40.)

In cross-examining Burgess, the prosecutor asked him if he had heard P.G.'s testimony and the recorded interview played at trial. Burgess indicated he had. The cross-examination continued:

21

Q  And just to be clear, you have no explanation why [P.G.] would say these things?

A  No.

Q  Why she would make up something?  Is that what you are telling us, that she made this up?

A  Yes.

Q  You would agree with me that P.G. is a smart, young lady, correct?

A  Yes.

 . . . .

Q  So you want us to believe that she is that clever, that she is that intelligent to make up all of that detail?

 [DEFENSE COUNSEL]: Objection to the form of the question.

 THE COURT:  Overruled.

 . . . .

A  Yes.

 . . . .

Q  That she had the wherewithal to think about I am going to do this at a friend's house to a friend in hopes that someone overhears us.  She is that clever?  You want us to believe that?

 [DEFENSE COUNSEL]: Argumentative.

 THE COURT:  Overruled.

 . . . .

A  I guess.

 . . . .

Q You want us to believe that she had the forethought to think I am going to do this at Ashley Davis's house in hopes that she tells my mom. She is that bright, correct? You want us to think that, correct?

A Yes.

Q And that she had the planning at seven to think . . . Ashley is going to tell my mom and my mom is going to take me to the cops and then the cops are going to take me for an interview and these are the things that I am going to tell them?

　　[DEFENSE COUNSEL]: Objection, compound question.

　　THE COURT: Overruled.

　　　　. . . .

Q Is she that bright, is she that clever?

A I am not sure.

　　　　. . . .

Q Because she is just that incredibly clever?

A I guess.

(Id. at 468–70, 472.)

Burgess acknowledges not initially objecting to this line of questioning. But, because he eventually did intersperse objections during this challenged cross-examination, we will review this prosecutorial misconduct argument de novo. See United States v. Pulido-Jacobo, 377 F.3d 1124, 1134 (10th Cir. 2004) (reviewing allegations of prosecutorial misconduct de novo). In conducting this de novo review, we consider 1) "'whether the conduct was, in fact, improper'" and, if so, 2) whether that improper conduct "'warrants reversal.'" United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996) (quoting United States v. Lonedog, 929 F.2d 568, 572

23

(10th Cir. 1991)).  "Prosecutorial misconduct does not warrant reversal if it was harmless error."  Lonedog, 929 F.2d at 572.

### a. It is not clear that the challenged cross-examination was improper

Burgess has failed to identify any Tenth Circuit case that has held that it is improper for a prosecutor to ask a defendant on cross-examination whether it is the defendant's view that a previous government witness had lied in his or her trial testimony.  This court has previously declined to adopt such a rule.  See United States v. Williamson, 53 F.3d 1500, 1521–23 (10th Cir. 1995); see also United States v. Dixon, 38 F. App'x 543, 548 (10th Cir. 2002) (unpublished) (stating that, "[i]n Williamson, this court declined to adopt a per se rule that it is misconduct for a prosecutor to force a defendant to testify that other witnesses have lied").  Moreover, courts that have held such cross-examination is improper do allow such questioning when a defendant opens the door by testifying on direct that a government witness has lied.  See United States v. Schmitz, 634 F.3d 1247, 1270 (11th Cir. 2011).  That is what occurred here.  Courts also permit a prosecutor to cross-examine the defendant on a government witness's motive to testify against the defendant when the defendant raised motive of the government witness on direct examination, see United States v. Cole, 41 F.3d 303, 309 (7th Cir. 1994) (citing United States v. Akitoye, 923 F.2d 221, 224 (1st Cir. 1991)).

### b. Even if this questioning was improper, the challenged cross-examination does not warrant reversal

Even if the prosecutor's challenged cross-examination of Burgess was improper, it would not warrant reversal.  The Government did not focus on this cross-examination

24

during closing argument.  Nor did the Government present a rebuttal witness to support P.G.'s testimony.  See Williamson, 53 F.3d at 1521–23 (distinguishing United States v. Richter, 826 F.2d 206 (2d Cir. 1987)).  Furthermore, the challenged cross-examination did not mislead the jury from its task.  It was clear, as the other evidence developed at trial, that the jury would have to decide which of the two witnesses—Burgess or P.G.—was telling the truth.  This cross-examination of Burgess did not change that, nor did this cross-examination unfairly tip the scales against Burgess.  See United States v. Stein, 985 F.3d 1254, 1268 (10th Cir. 2021) ("'[P]rosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial" before it will rise to the level of a due process violation' warranting reversal." (quoting United States v. Caballero, 277 F.3d 1235, 1248 (10th Cir. 2002) (quoting Greer v. Miller, 483 U.S. 756, 765 (1987)))).  Even if the cross-examination was improper, then, we are confident it did not affect the outcome of the trial and, therefore, does not warrant reversal.

### 2.  Prosecutor's rebuttal closing

In his rebuttal closing, the prosecutor misstated the evidence: "And as far as anal sex goes, who said anal sex?  [P.G.] said that his penis touched her poo hole. That doesn't mean that he, in fact, inserted it.  It is the touching, it is the touching. That is something very different."  (III R. 515.)  In fact, P.G. did testify that Burgess inserted his penis "into her butt."  (Id. at 171–72.)

Because Burgess neither objected to this misstatement of the evidence nor asked for surrebuttal argument, however, we review this prosecutorial misconduct

25

claim for plain error.  See Fed. R. Crim. P. 52(b); see also United States v. Kepler, 74 F.4th 1292, 1315 (10th Cir. 2023).  Burgess, therefore, will be entitled to relief only if he establishes that "[1] the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his or her substantial rights."  Kepler, 74 F.4th at 1315 (quoting United States v. Anaya, 727 F.3d 1043, 1059 (10th Cir. 2013)).  "To establish that an error affects a defendant's 'substantial rights,' the appellant must show 'there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'"  Id. (quoting United States v. Bustamante-Conchas, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc)).  Burgess has not explained how the prosecutor's misstatement of this evidence changed the outcome of the trial, particularly in light of the fact that the misstated evidence was not relevant to either charged offense since Burgess was not charged with anal penetration.

## D.  Cumulative error

Lastly, we reject Burgess's argument that his convictions should be reversed because of the cumulative error occurring during his trial.  The only possible errors we noted were at most the prosecutor's arguably improper questions and closing argument.  One of those alleged errors was preserved; the other was not.  See United States v. Starks, 34 F.4th 1142, 1169–70 (10th Cir. 2022) (explaining cumulative-error analysis where some errors are preserved and others are not).  But, in any event, we have already concluded that neither of those errors warranted

reversing Burgess's convictions. Considering the errors cumulatively here does not change that calculus.

## IV. CONCLUSION

Although Fed. R. Evid. 807, the residual exception to the rule against hearsay, should apply only rarely, in extraordinary circumstances, the district court did not abuse its discretion in this case by applying Rule 807 to admit into evidence the recorded forensic interview with P.G. We also reject Burgess's other arguments for a new trial and, therefore, AFFIRM both of his convictions.